[No. B182869. Second Dist., Div. Seven. June 12, 2006.]

DIRK SUMMERS, Plaintiff and Respondent, v.
RUE McCLANAHAN, Defendant and Appellant.

COUNSEL

Haight Brown & Bonesteel, William Baumgaertner, Rita Gunasekaran; The Law Offices of John C. Edwards and John C. Edwards for Defendant and Appellant.

Eugene Paolino for Plaintiff and Respondent.

OPINION

**JOHNSON, Acting P. J.**—The trial court awarded plaintiff Dirk Summers a $3.75 million default judgment. Defendant Rue McClanahan appeals from the judgment and the trial court's orders denying her motions to set aside her default and vacate the judgment. Because we conclude plaintiff's attempted service of process did not substantially comply with the requirements of Code of Civil Procedure section 416.90, we reverse the first trial court order and remand the cause to the trial court with directions to set aside defendant's default, vacate the default judgment and set a reasonable time for defendant to file and serve such motions or responsive pleadings as she deems appropriate.

### FACTS AND PROCEEDINGS BELOW

The essential facts are undisputed.[1]

Summers filed this action against McClanahan for slander, libel and intentional infliction of emotional distress growing out of a failed joint business venture. The complaint seeks damages on each cause of action "in an amount exceeding $10,000,000 according to proof at the time of trial" and "an award of punitive and exemplary damages against defendant McClanahan according to proof at the time of trial."

Plaintiff's counsel, Eugene Paolino, declared he served the summons and complaint in this action on McClanahan on June 6, 2003, by leaving copies with Barbara Lawrence, McClanahan's "authorized agent," at Lawrence's office in Los Angeles and mailing copies to Lawrence at her office address. Included with the summons and complaint were letters from Paolino to Lawrence and McClanahan, a notice of deposition directed to McClanahan and deposition subpoenas directed to four other persons. Lawrence testified

---

[1] The only material fact disputed below was whether the summons was included in the documents purportedly served on McClanahan. The trial court found it was included and substantial evidence supports this finding.

she "immediately" forwarded the documents to "John Edwards, Ms. McClanahan's attorney." Edwards currently represented McClanahan in another action involving Summers.

Edwards wrote to Paolino a few weeks after receiving the documents from Lawrence. Edwards complained Paolino's attempt to directly communicate with McClanahan "knowing full well that she is represented by counsel" constituted a violation of rule 2-100 of the Rules of Professional Conduct. He also objected to the deposition notice and subpoenas and informed Paolino that unless he took the depositions off calendar "a motion to stay the depositions and to quash the notice and subpoenas will be made and sanctions requested." Edwards did not contend the summons and complaint had been improperly served on McClanahan. Paolino did not reply to Edwards's letter.

On November 7, 2003, Paolino mailed a copy of a request for entry of default and court judgment to McClanahan in care of Lawrence at the same address he had used for the summons and complaint. The request for court judgment stated the amounts of general and special damages were "to be proved." Lawrence testified she never received this document. When McClanahan still did not respond to the complaint Paolino filed the request for entry of default and court judgment, along with a proof of service of the summons and a due diligence declaration.

At the default prove-up hearing Summers submitted an 11-page declaration summarizing his case against McClanahan and his professional background as a television writer and producer. He stated as a result of McClanahan's defamatory statements about him he had been unable to obtain work and sought damages for past and future lost earnings in the amount of $1.75 million, damages for loss of reputation in the amount of $1 million and punitive damages in the amount of $1 million. Summers made no attempt to serve McClanahan with this declaration or a statement of damages under Code of Civil Procedure section 425.11 or a statement of punitive damages under Code of Civil Procedure section 425.115.

The trial court entered a default judgment in favor of Summers and against McClanahan in the sum of $3.75 million.

Six days after entry of the judgment McClanahan filed a motion to set aside the default and default judgment on the grounds of improper service of the summons and extrinsic fraud or mistake.

The trial court denied this motion. The court agreed Lawrence was not authorized by McClanahan to accept service of process on her behalf. It also

found, however, Lawrence had forwarded the summons and complaint to Edwards who admitted to being McClanahan's counsel. Because the documents "found [their] way to the defendant by admitted receipt of counsel for defendant" the trial court concluded service was effective under Code of Civil Procedure section 416.90 which authorizes service of the summons and complaint on a person "authorized by [the defendant] to receive service of process."[2]

McClanahan filed a second motion to set aside the default and default judgment accompanied by a demurrer to the complaint. This time she based her motion on attorney fault under section 473, subdivision (b). In his declaration accompanying the motion Edwards stated at the time he received the complaint from Lawrence he did not believe McClanahan had been properly served. Accordingly he advised McClanahan she had been sued but that she had not been served and "she did not have to respond to the complaint until she was served." "Therefore," Edwards declared, "the decision to not file a response was entirely mine and was not the fault of Ms. McClanahan."

The trial court denied this motion too. The court ruled the second motion was a subsequent application for the same order it had previously denied and as such was barred by section 1008, subdivision (b) because it was not based on any new or different facts, circumstances or law; only on a different theory for relief. The court further ruled the motion was premature because Edwards's "fault" was in concluding McClanahan had not properly been served but an appellate court might conclude Edwards was correct.

McClanahan filed a timely notice of appeal from the default judgment and the orders denying her motions to set aside the default and default judgment.

## DISCUSSION

For the reasons discussed below we conclude the trial court erred in denying McClanahan's first motion to vacate the default and set aside the judgment based on Summers's failure to properly serve the summons and complaint.

A. *Historical Background of Section 416.90.*

In 1969 the California Legislature enacted a comprehensive revision of the laws governing service of process.[3] The Legislature based this revision on recommendations contained in a report by a joint committee representing the

---

[2] All statutory references are to the Code of Civil Procedure.

[3] Statutes 1969, chapter 1610, section 3, page 3363.

Judicial Council and the State Bar[4] and these recommendations were adopted as the legislative history of the statutes.[5]

Prior to the 1969 amendments many courts had required "strict and exact compliance" with the statutory requirements for service of process.[6] In adopting a "liberal construction" of the new laws our Supreme Court relied on its understanding of the statutes' legislative history and its well-considered view of public policy.[7] Although the court was misled as to the legislative history, its public policy analysis was clearly correct.[8]

At the time California enacted its new statutes many other jurisdictions had adopted a liberal, practical approach to service of process issues.

---

[4] Report of the State Bar Committee on Administration of Justice (1969) 44 State Bar Journal 681, 682.

[5] Report of the State Bar Committee on Administration of Justice, *supra*, 44 State Bar Journal at page 682.

[6] *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180].

[7] *Pasadena Medi-Center Associates v. Superior Court, supra,* 9 Cal.3d at page 778.

[8] In discussing the legislative history of the new service of process statutes the Supreme Court quoted extensively from Li, Attorney's Guide to California Jurisdiction and Process (Cont.Ed. Bar 1970) (hereafter Li) which in turn purported to quote from " 'the Nov. 25, 1968, Report of the Judicial Council's Special Committee on Jurisdiction.' " (*Pasadena Medi-Center Associates v. Superior Court, supra,* 9 Cal.3d at p. 778.) In his book Li quotes this special committee report as stating: " ' "The provisions of this chapter should be liberally construed to effectuate service and uphold the jurisdiction of the court . . . ." ' " (*Ibid.*; see also Li, *supra*, at pp. 57–58.) The Supreme Court accepted Li's alleged quotation from the report as evidence the drafters of the legislation intended the new service of process statutes should be "liberally construed." (*Pasadena Medi-Center Associates v. Superior Court, supra,* 9 Cal.3d at p. 778.) But, as we explain below, our research discloses no such special committee report exists and the comments Li quotes in his book are from a Judicial Council staff memorandum, possibly written by Li himself.

We attempted to obtain a copy of the special committee report referred to in Li's book in the belief it might contain other comments relevant to the service of process issue in the present case. We contacted the Judicial Council, the Legislative Archives, the Legislative Intent Service and the Continuing Education of the Bar. None of these organizations could locate the report referred to in Li's book. Our inquiry to Li went unanswered. Finally our court librarian located a former Judicial Council staff attorney who went through his storage boxes and found a November 25, 1968 "staff draft" of comments on the proposed legislation which contains the statements Li attributes to the special committee report. These staff comments do not appear in the final Judicial Council report on the proposed legislation. (Jud. Council of Cal. (1969) Annual Rep. to the Governor and the Legislature, Revision of Title 5 (Commencing With Section 405) of the Code Of Civil Procedure Relating to Jurisdiction and Service of Process, pp. 27–55. (Hereafter Judicial Council Annual Report.)) It appears Li, who at the time was a staff attorney at the Judicial Council and one of the drafters of the legislation, may have inflated his contribution to the process by representing his "staff draft" as the actual report of the special committee.

*Karlsson v. Rabinowitz*[9] is illustrative of cases viewing service of process issues from a practical standpoint. Service of process on Rabinowitz was effected by leaving a copy of the summons and complaint with his spouse at their Maryland home three weeks after Rabinowitz had preceded his family to Arizona where he took a new job and bought a home intending never to return to Maryland. Ms. Rabinowitz remained in Maryland to complete moving arrangements and the sale of their home before joining her husband in Arizona. It was undisputed Ms. Rabinowitz promptly notified her husband of this service of process.[10] The issue before the court of appeals was whether substituted personal service on Ms. Rabinowitz satisfied rule 4(d)(1) of the Federal Rules of Civil Procedure (28 U.S.C.) which provides for substituted service on a person at "his dwelling house or usual place of abode."[11] In resolving this issue the court declined to choose between or attempt to reconcile cases "in hopeless and irreconcilable conflict" over the meaning of "dwelling house" and "usual place of abode."[12] Instead the court concluded insofar as a person's abode or dwelling depended on the person's intention to return or not return to his living quarters such an intent is not the test for effective service in itself but is "some indication as to whether or not it is likely in a particular case that the one served will actually receive notice of the commencement of the action and thus be advised of his duty to defend."[13] The court went on to state: "To the extent that there is any rule or guide to be followed by the federal courts in such a case it is that where actual notice of the commencement of the action and the duty to defend has been received by the one served, the provisions of Rule 4(d)(1) should be *liberally construed to effectuate service and uphold jurisdiction of the court*, thus insuring the opportunity for a trial on the merits."[14]

The *Karlsson* court distinguished the facts in the case before it from those in *Williams v. Capital Transit Co.*[15] In *Williams*, process was served on a defendant's ex-wife at the home they had once shared in Washington, D.C. At the time of service on the ex-wife she and the defendant had not seen each other for three years. In the meantime, defendant had remarried and moved to Salt Lake City.[16] Defendant's former spouse did not inform him she had been served with process. He did not learn of the default judgment against him until three years after its entry.[17] The court of appeals in *Williams* affirmed the trial court's

---

[9] *Karlsson v. Rabinowitz* (4th Cir. 1963) 318 F.2d 666.

[10] *Karlsson v. Rabinowitz, supra,* 318 F.2d at page 667 and footnote 2.

[11] Compare Code of Civil Procedure section 415.20, subdivision (b).

[12] *Karlsson v. Rabinowitz, supra,* 318 F.2d at page 668.

[13] *Karlsson v. Rabinowitz, supra,* 318 F.2d at page 668.

[14] *Karlsson v. Rabinowitz, supra,* 318 F.2d at page 668, italics added.

[15] *Williams v. Capital Transit Co.* (1954) 94 U.S. App.D.C. 221 [215 F.2d 487].

[16] *Williams v. Capital Transit Co., supra,* 215 F.2d at page 489.

[17] *Williams v. Capital Transit Co., supra,* 215 F.2d at page 489.

order setting aside the judgment against defendant because his ex-wife's home was not his place of abode when process was served on her.[18]

To the *Karlsson* court the distinction between the facts in the case before it and the facts in *Williams* lay in the likelihood of service resulting in actual notice to the person intended to be served. In *Karlsson* the family ties between the Rabinowitzes made it highly likely Mr. Rabinowitz would receive notice of the action from Ms. Rabinowitz in time to defend. On the other hand the court concluded from the facts in *Williams* "[i]t is patent that the likelihood of the husband's receipt, through such service of process, of actual knowledge of the action and his duty to defend is rather remote."[19]

## B. *Cases Construing the Revised Service of Process Law.*

In *Pasadena Medi-Center v. Superior Court* the issue was whether service of process on a person erroneously identified by a corporation in official documents as its secretary and treasurer constituted service on the corporation under section 416.10, subdivision (b) which authorizes service by delivering a copy of the summons and complaint to the corporation's secretary or treasurer. It was undisputed the erroneously identified secretary-treasurer forwarded the papers to the real secretary-treasurer and the real secretary-treasurer discussed the case with the other directors of the corporation.[20]

Adopting a liberal and practical approach to service of process our Supreme Court held the plaintiff, by serving "a corporate agent with ostensible authority to receive process, effected valid service upon the defendants."[21] The court noted, "[t]he case at bar demonstrates the desirability of liberal construction of the new statutes."[22] In this case, the court explained, "[d]efendant corporation, having misled plaintiff, bears the responsibility for plaintiff's failure to serve an authorized corporate officer, and should not be permitted to strip itself of assets in order to avoid the payment of an uncontested judgment."[23]

The liberal and practical approach to service of process has been followed in subsequent Court of Appeal decisions. In *Gibble v. Car-Lene Research, Inc.* the court stated: "It is well settled that strict compliance with statutes governing service of process is not required. Rather, in deciding whether service was valid, the statutory provisions regarding service of

---

[18] *Williams v. Capital Transit Co., supra,* 215 F.2d at page 490.

[19] *Karlsson v. Rabinowitz, supra,* 318 F.2d at page 668.

[20] *Pasadena Medi-Center Associates v. Superior Court, supra,* 9 Cal.3d at page 776.

[21] *Pasadena Medi-Center Associates v. Superior Court, supra,* 9 Cal.3d at page 783.

[22] *Pasadena Medi-Center Associates v. Superior Court, supra,* 9 Cal.3d at page 778.

[23] *Pasadena Medi-Center Associates v. Superior Court, supra,* 9 Cal.3d at pages 782–783.

process should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant."[24]

Nevertheless there are cases decided after the enactment of the revised statutes which have continued to apply the strict construction rule. In *Taylor-Rush v. Multitech Corp.*, for example, the court stated: "A defendant is under no duty to respond to a defectively served summons. The notice requirement is not satisfied by actual knowledge of the action without service conforming to the statutory requirements, which are to be strictly construed."[25]

Edwards may have relied on the *Taylor-Rush* line of cases in advising McClanahan she did not have to respond to Summers's complaint. If he did rely on those cases he erred. It is clear from our Supreme Court's opinion in *Pasadena Medi-Center* the old rule of strict construction has been rejected and a new rule of liberal construction has been adopted.[26]

> ### C. Summers Failed to Demonstrate Substantial Compliance with Section 416.90.

Section 416.90 authorizes personal service on a defendant "by delivering a copy of the summons and of the complaint . . . to a person authorized by him to receive service of process."

In its comments on this provision the Judicial Council stated: "If the process is delivered to an agent of defendant, such agent must be one who is

---

[24] *Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 313 [78 Cal.Rptr.2d 892]; accord, *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1436 [29 Cal.Rptr.2d 746] ("[S]trict compliance is not required."); *Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387, 1392 [8 Cal.Rptr.2d 351] (provisions of the service of process statutes "are now to be liberally construed to effectuate service and uphold jurisdiction if actual notice has been received by the defendant[.]"; *Mannesmann DeMag, Ltd. v. Superior Court* (1985) 172 Cal.App.3d 1118, 1122 [218 Cal.Rptr. 632] ("As a general rule . . . the provisions of the rules governing service of process are to be liberally construed.").

[25] *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 111 [265 Cal.Rptr. 672]; see also *Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1466 [246 Cal.Rptr. 815] (" 'The requirement of notice "is not satisfied by actual knowledge without notification conforming to the statutory requirements" [citation]; it is long-settled that methods of service are to be strictly construed . . . .' "); *Slaughter v. Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1251 [209 Cal.Rptr. 189] ("methods of service are to be strictly construed").

[26] *Pasadena Medi-Center Associates v. Superior Court*, *supra*, 9 Cal.3d at pages 778–779.

authorized by law or appointment to receive service of process, and the agent of an individual for other purposes is not necessarily authorized to receive such process."[27]

■ In *Doherty & Co. v. Goodman*[28] the United States Supreme Court provided guidance for determining who is a proper agent for acceptance of service on behalf of a defendant. The court concluded a specific appointment is not required, but the principal-agent relationship must be close and enduring enough to make it highly probable the defendant will receive actual notice.

The plaintiff in *Doherty & Co. v. Goodman* was a resident of Iowa who served process on the defendant securities dealer, a resident of New York, by delivering the summons and complaint to an employee of defendant in his Des Moines office. The employee's only specific authority was to sell securities for defendant. Defendant "never . . . consented that service of process upon this agent should constitute service upon himself."[29] The Supreme Court nevertheless upheld the service under an Iowa law, which authorized service of process " 'on any agent or clerk employed in' " the office of an individual or company doing business " 'in any county other than that in which the principal resides.' "[30] The court rejected the defendant's due process challenge to the statute. It agreed with an Iowa Supreme Court opinion which upheld the statute against a constitutional attack because " 'there is not only "reasonable probability" but practical moral certainty that the defendant will receive actual notice of the pendency of the action.' "[31]

In a law review note examining *Doherty & Co.* the author characterized the method of service authorized by the Iowa statute as "unquestionabl[y]" reasonable.[32] The owner of the business "selects as his agent for business purposes the person upon whom the summons is served."[33] Furthermore, the statute limits service to a "clerk" or "agent," persons who can "reasonably [be] expected to notify the party sued."[34]

---

[27] Judicial Council Annual Report, *supra,* at page 55.

[28] *Doherty & Co. v. Goodman* (1935) 294 U.S. 623 [79 L.Ed. 1097, 55 S.Ct. 553].

[29] *Doherty & Co. v. Goodman, supra,* 294 U.S. at page 625.

[30] *Doherty & Co. v. Goodman, supra,* 294 U.S. at page 625.

[31] *Doherty & Co. v. Goodman, supra,* 294 U.S. at page 627.

[32] McBain, *Service Upon a Non-Resident by Service Upon His Agent* (1935) 23 Cal. L.Rev. 482, 486 (hereafter McBain).

[33] McBain, *supra,* 23 Cal. L.Rev. at page 486.

[34] McBain, *supra,* 23 Cal. L.Rev. at page 486.

When a defendant challenges the court's personal jurisdiction on the ground of improper service of process "the burden is on the plaintiff to prove the existence of jurisdiction by proving, inter alia, the facts requisite to an effective service."[35] Taking into consideration the comment of the Judicial Council and the interpretation of the new service of process statutes by our Supreme Court in *Pasadena Medi-Center*,[36] we conclude Summers failed to carry his burden of proof.

Summers contends the present case is analogous to *Warner Bros. Records, Inc. v. Golden West Music Sales* in which service of process on Arthur Leeds, the attorney for the individual defendants, resulted in actual notice to the defendants.[37] The court in *Warner Bros.* noted Leeds was not only the defendants' agent, he was a codefendant in the case. "The nature of the services performed by Leeds for defendants and the necessity for his repeated communication with them in performing those services, made it 'highly probable' that defendants would receive actual notice of the service of process on Leeds upon their behalf."[38]

*Warner Bros.* is distinguishable from the case before us in several important ways. In our case, process was not served on McClanahan's attorney, Edwards, but on her personal manager, Lawrence. Lawrence was not a codefendant in the lawsuit brought by Summers and had no involvement in the transaction giving rise to Summers's action. Furthermore, the court in *Warner Bros.* did not hold service of process on Leeds under the circumstances described above constituted service on the individual defendants. It only concluded "service of the summons and complaint on Leeds *could* be valid" as to the individual defendants because "Leeds' relationship with the individual defendants *may* have been sufficiently close and enduring to make it reasonably certain that they would be apprised of the service of Leeds upon their behalf."[39] Finding the trial court applied the wrong test in determining Leeds's agency for purposes of section 416.90 the Court of Appeal reversed the order quashing service as to the individual defendants and remanded the cause to the trial court to determine whether Leeds was their ostensible agent

---

[35] *Dill v. Berquist Construction Co., supra,* 24 Cal.App.4th at pages 1439–1440.

[36] See discussion at pages 410–411, *ante.*

[37] *Warner Bros. Records, Inc. v. Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1015 [112 Cal.Rptr. 71].

[38] *Warner Bros. Records, Inc. v. Golden West Music Sales, supra,* 36 Cal.App.3d at page 1018; and see *Karlsson v. Rabinowitz, supra,* 318 F.2d at page 668, discussed at pages 409–410, *ante.*

[39] *Warner Bros. Records, Inc. v. Golden West Music Sales, supra,* 36 Cal.App.3d at page 1018, italics added.

to receive service of process.[40] The only similarity between *Warner Bros.* and the case at bench is that in both cases the service of process ultimately resulted in the defendants receiving actual notice of the action. But as we discuss more fully below no California appellate court has gone so far as to uphold a service of process solely on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service.

In the present case Summers offered no evidence to show McClanahan specifically authorized Lawrence to accept service of process as her agent. He did not dispute Lawrence's testimony she had "never been authorized by Ms. McClanahan to accept service of process on her behalf" and had never "represented to anyone, either expressly or impliedly, that [she had] authority to accept service of process on her behalf." The trial court found as a fact Lawrence "does not have authority to accept service of process on [McClanahan's] behalf."

Nor did Summers offer any evidence to show Lawrence was McClanahan's ostensible agent for service of process. Indeed, he offered no explanation why he delivered the summons and complaint to Lawrence instead of Edwards.[41] Lawrence testified without contradiction she did not handle McClanahan's finances and did not involve herself in McClanahan's financial decisions.

The question remains whether service can be upheld on the theory a close connection between Lawrence and McClanahan made it " 'highly probable' " McClanahan would receive actual notice of the service of process on Lawrence on her behalf.[42]

■ We find no evidence in the record to support the existence of a close relationship between Lawrence and McClanahan. Although Lawrence was McClanahan's personal manager at the time the summons and complaint

---

[40] *Warner Bros. Records, Inc. v. Golden West Music Sales, supra,* 36 Cal.App.3d at page 1019.

[41] At the time process was served on Lawrence in this action an appeal was pending from a judgment in another action involving the same parties, the same attorneys and the same failed business venture. (See *Summers v. McClanahan* (June 24, 2004, D041980) [nonpub. opn.].) Thus McClanahan's attorney, Edwards, had a closer relationship to McClanahan, at least in the context of the underlying dispute, than Lawrence did and Summers clearly knew where to deliver process to Edwards on McClanahan's behalf. McClanahan has asked us to take judicial notice of other court records involving Summers and McClanahan. These documents have no relevance to the issues in this appeal and therefore her request is denied.

[42] *Warner Bros. Records, Inc. v. Golden West Music Sales, supra,* 36 Cal.App.3d at page 1018.

were delivered to her office there is no evidence she was in frequent communication with McClanahan in the course of performing her service which, she testified, was "to advise [McClanahan] on her career choices." The record is also devoid of any evidence Lawrence and McClanahan had a close business or personal relationship, which would make it highly likely Lawrence would inform McClanahan she was being sued by Summers. On the contrary Lawrence's immediate reaction upon receiving the summons and complaint was not to notify McClanahan but to notify McClanahan's attorney, Edwards, and send him copies of the summons and complaint.

The only evidence relied on by Summers to support the validity of the service on McClanahan through Lawrence was the fact the summons and complaint made their way from Lawrence to McClanahan's attorney, Edwards, who notified McClanahan of the suit. Summers's rationale would appear to be if service of process, even if totally outside the statutory prescriptions, has somehow resulted in actual notice to the defendant in time to defend the action, then any defects in the manner of service should be overlooked. As we previously observed, no California appellate opinion has adopted this rationale and, we think, for good reason.

Adopting Summers's rationale would constitute a judicial repeal of California's statutory law governing service of process and the adoption of only one rule: A summons may be served on anyone, anywhere, by any means which results in actual notice of the action in time to defend. Clearly this is not what the Supreme Court had in mind when it held the revised service of process law should be liberally construed. One benefit of the liberal construction rule is its tendency to eliminate unnecessary, time-consuming, and costly disputes over service of process issues. An "actual notice" rule would do just the opposite. It would create a standardless free-for-all in which defendants would bring motions to quash service claiming they never received actual notice and, in many cases, plaintiffs would be unable to prove otherwise. In addition, such a rule would put a premium on defendants developing creative ways of evading service thereby thwarting the fundamental principle disputes should be resolved in courts, on the merits.

For the reasons given above we conclude the trial court did not acquire personal jurisdiction over McClanahan through substituted service on Lawrence and the default judgment must be set aside and the entry of default vacated.[43]

---

[43] Given our conclusion the judgment and entry of default must be reversed for lack of proper service of the summons and complaint we need not address McClanahan's other grounds for reversing the judgment.

## DISPOSITION

The trial court's first order denying defendant's motion to set aside the judgment and vacate her default is reversed and the cause is remanded with directions to grant the motion and set a reasonable time for defendant to file and serve such motions or responsive pleadings as she deems appropriate. The appeals from the second order and the judgment are dismissed as moot. Defendant is awarded her costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied July 11, 2006, and respondent's petition for review by the Supreme Court was denied September 20, 2006, S145273.