Filed 1/6/15  R.N. v. J.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| R.N., | |
| Appellant, | E056992 |
| v. | (Super.Ct.No. FAMVS1001256) |
| J.C., | OPINION |
| Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Khymberli Apaloo, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

R.N., in pro. per., for Appellant.

Law Offices of Gabriel Castellanos and Gabriel Castellanos for Respondent.

R.N. (Father) and J.C. (Mother) are married and share a daughter, T.N.  Mother and Father separated.  Father resides in California.  Mother and T.N. reside in Iowa.  In California, Father filed a petition to establish a parental relationship with T.N.  Mother moved to (1) quash the service of summons, (2) dismiss the entire action due to (a) lack

of personal jurisdiction, and (b) California being an inconvenient forum; Mother requested the venue of the case be changed to Iowa.

The California family court quashed the service of summons in the parentage action because Father served the documents on Mother's attorney, who was not authorized to accept service. (Code Civ. Proc, § 416.90.) Mother filed a family law case in Iowa concerning child custody, visitation, and support. The family court, in California, concluded Father had submitted to personal jurisdiction in Iowa by being personally served. The California family court found California was an inconvenient forum for the custody matters and relinquished jurisdiction to Iowa.

Father raises six issues on appeal. First, Father contends Mother filed a response in the portion of the case concerning nullifying their marriage, so the family court retained jurisdiction over the parentage matter. Second, Father asserts Mother failed to fully substantiate her Iowa residency. Third, Father contends the family court was biased in favor of Mother and therefore abused its discretion. Fourth, Father asserts he is entitled to relief because Mother moved T.N. to Iowa without Father's consent. Fifth, Father contends Mother forfeited jurisdiction in Iowa by perjuring herself in the Iowa courts. Sixth, Father contends the family court erred by finding Mother's attorney could not accept service of process. We affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Mother and Father began living together in December 2006, in Riverside, California. Mother and Father married in May 2007, in Las Vegas, Nevada. T.N. was born in August 2007, in Riverside. In October 2007, Mother, Father, and T.N. moved

2

from Riverside to Las Vegas. In May 2009, Mother and Father separated. Father returned to California, while Mother and T.N. remained in Las Vegas.

On May 4, 2010, Father filed a petition, in California, to annul the marriage. Mother asserted she never received notice of the action. On May 24, Father filed an order to show cause regarding adding T.N. to the petition along with issues of child custody and visitation. The court's file did not contain a proof of service for the order to show cause. In June 2010, Mother informed Father she and T.N. were moving to Iowa, from Las Vegas, and gave Father their new address in Iowa.

The family court held a hearing in the matter, in August 2010. Mother did not appear. The court ordered Father to have sole legal and physical custody of T.N. with reasonable supervised visits between Mother and T.N. The court ordered Father to file a petition establishing paternity. In May 2011, T.N. underwent surgery to have tubes placed in her ears. T.N. suffers from hearing problems, vision problems, and speech delays. T.N.'s doctors are located in Iowa.

On September 26, 2011, Mother responded to the nullity of marriage action. In the response, Mother requested the August 2010 custody orders be dismissed or stayed. Also on September 26, in California, Mother filed a declaration under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which reflected her address in Iowa. On September 29, Mother moved the California family court to vacate the August 2010 child custody order due to lack of jurisdiction.

The following day, on September 30, Father filed a Petition to Establish a Parental Relationship (parentage petition), in California. Father did not personally serve

3

Mother with the petition. In October, Father filed a Proof of Service by Mail reflecting the summons and petition were mailed to Mother's attorney. Mother did not authorize her attorney to accept service. On November 23, in an Iowa court, Mother filed a Petition to Establish Paternity, Custody and Support.

On December 7, the California family court vacated the August 2010 custody orders. At that December 7 hearing, Father was personally served with the Iowa petition. In January 2012, Mother moved to quash the California service of summons, related to Father's parentage petition—the petition that had been served on Mother's attorney. In May, the California family court granted the motion to quash.

When granting the motion, the family court explained to Father, "Had it been just another O.S.C. or a motion or a set of discovery that you were requesting from [Mother] in the nullity action, there would have been no problem with you serving her attorney by mail, but when it comes to proof of service of a summons and a petition for another action . . . [u]nder 415.30 of the Code of Civil Procedure, you can't just serve a petition by mail in order to start a new action, which is what you did. You served a petition and a summons by mail." The court explained that Mother's attorney was not authorized to accept service on Mother's behalf. The court told Father that Mother's attorney never signed a Notice of Acknowledgement and Receipt, which meant service of the petition was not effective. The court said it was "quash[ing] the UPA action," referring to Father's petition.

The court explained that Mother had filed a petition in an Iowa court, and the Iowa court had personal jurisdiction over Father, since Father was personally served

4

with the Iowa documents. The court found Mother had informed Father of her Iowa address in June 2010. The Iowa address appeared in an e-mail, a verified complaint, and Mother's response to the nullity action. Thus, the court found Iowa had been T.N.'s home state since November 2011, if not longer. The court found California was not a convenient forum for the custody and visitation matter, and relinquished jurisdiction to Iowa.

Father asked if the court was also relinquishing jurisdiction for the nullity action. The court clarified that it could grant the nullity, but "the custody issues presented by the nullity" would be heard in Iowa. The court explained that Father did not include T.N. as part of the nullity action; Father "said there were no minor children" on the nullity paperwork.

In June, Father filed a motion for reconsideration. As part of the motion, Father faulted the family court for not making a record about the conversation the court had with the judge in Iowa. At the hearing on the motion for reconsideration, the family court summarized its conversation with the Iowa judge. The court said it spoke to the Iowa judge (Judge Blink) for approximately 20 minutes. Judge Blink confirmed Mother had filed a case in Iowa, and Iowa had stayed the proceedings, pending the outcome of the California hearing. Judge Blink believed Iowa was the proper venue for the custody proceedings, because T.N. "had been living in Iowa for quite some time." The family court informed Father than a court reporter transcribed the conversation, so Father could order a transcript. The family court also said it had provided a summary of the conversation at the hearing on the motion, so the court felt it had not erred.

5

Father asked the court to clarify the basis for granting Mother's motion to quash. The court explained Father had filed a nullity petition, which may not have been properly served, but Mother responded to it. Therefore, the court had jurisdiction over Mother for the nullity proceedings. However, in the nullity proceedings, Father claimed there were no children. Mother claimed there was a child, so Mother "put the child at issue in the nullity." Father then filed another petition, using the same case number as the nullity proceeding. The petition was for establishing a parental relationship. Father served that petition by mail, but it needed to be personally served. Since Father did not properly serve the petition, the court quashed it.

The court continued, explaining that it "left [the] nullity [action] in place" but found California was not the correct venue for the custody and visitation issue. The court could grant an annulment, but it could not handle the custody and visitation issues.

Father informed the court that the marriage "was nothing but lies," and "there are accusations of multiple individuals being the possible parent of [T.N.]" Father told the court Mother needed to prove she met the requirements for being a resident of Iowa. Father said, "If she proves everything, if she proves her residency and she does everything, everything is documented, then obviously I have no choice but to say fine, she substantiated her claims, and I have no choice but to move on . . . . All I am trying to do is get answers."

The family court explained that it reviewed Father's court file and found Father "got a court order about the custody visitation only to have it set aside. [Mother's attorney] came in and said, hey, we haven't been properly served with this, and I have a

6

motion that is going to be set on calendar to have the whole UPA [(Uniform Parentage Act)] action quashed, and he did. [The other commissioner] set it aside." The court explained that Mother's UCCJEA declaration reflected she had been living in Iowa from 2010 to the present. The court noted Mother had also sent Father an e-mail with her Iowa address. Mother's declaration, which included her Iowa address, was filed in September 2011, so the court found Mother had been living in Iowa "for at least a year." The court explained that Father failed to provide new facts or law to support a motion for reconsideration. The court denied Father's motion for reconsideration.

**DISCUSSION**

A.     <u>JURISDICTION</u>

1.     *CONTENTION*

Father contends the family court erred by declining to exercise jurisdiction over the child custody issues.

2.     *LAW*

We review the family court's jurisdictional finding for substantial evidence. (*Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 954.) "'On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence. [Citation.]' [Citation.] 'We do not reweigh the evidence or reconsider credibility determinations. [Citation.]' [Citation.]" (*In re Marriage of Calcaterra and Badakhsh* (2005) 132 Cal.App.4th 28, 34.)

7

"The UCCJEA applies to interstate child custody disputes, and it 'provides the exclusive method of determining subject matter jurisdiction in custody cases in California.' [Citations.]" (*In re Baby Boy M.* (2006) 141 Cal.App.4th 588, 598, fn. omitted; *In re Marriage of Sareen* (2007) 153 Cal.App.4th 371, 376.)  The UCCJEA's jurisdictional requirements are codified in Family Code section 3421,[1] which provides: "[A] court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:  [¶] (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

"(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under section 3427 or 3428, and both of the following are true:  [¶]  (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.  [¶]  (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

"(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.  [¶]  (4) No

---

[1] All subsequent statutory references will be to the Family Code unless otherwise indicated.

8

court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

"(b) Subdivision (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state. [¶] (c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination."

### 3. *HOME STATE JURISDICTION*

We begin with the "home state" basis for jurisdiction. The UCCJEA gives preference to "home state" jurisdiction. (*Zenide v. Superior Court* (1994) 22 Cal.App.4th 1287, 1294 (*Zenide*).) "'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." (§ 3402, subd. (g).)

T.N. was born in California, and lived here for approximately six weeks before moving to Nevada with Mother and Father. T.N. has not resided in California since she was six weeks old. T.N. left California in 2007. The nullity proceedings were filed in May 2010. Father's parentage petition was filed in September 2011. Mother's Iowa Paternity, Custody and Support Petition was filed in November 2011. Thus, T.N. had not resided in California for the two-year period prior to the nullity action and for the three-year period prior to the parentage actions. As a result, California was not T.N.'s

9

home state for purposes of these proceedings because T.N. did not reside in California for at least six consecutive months immediately before the commencement of a child custody proceeding. Therefore, the trial court was correct in not finding home state jurisdiction in California.

As set forth *ante*, the UCCJEA prefers custody disputes be litigated in the child's home state. In a declaration, Mother declared that, in June 2010, she informed Father she and T.N. were moving to Iowa. The record includes an e-mail from Mother to Father dated June 19, 2010, in which Mother gives Father her and T.N.'s address in Iowa. In September 2011, Mother filed a declaration under the UCCJEA, which reflected her address in Iowa. The custody orders from the nullity proceeding were vacated, and service of Father's parentage petition was improper as discussed *post*. Thus, Mother's action in Iowa was the only action wherein the case was active and the opposing party had been properly served.[2]

The evidence reflects T.N. moved to Iowa in June 2010. Mother's Iowa custody/parentage petition was filed in November 2011. Therefore, Iowa was T.N.'s home state for purposes of the active petition because T.N. had been residing in Iowa for at least six consecutive months immediately before the commencement of the active Iowa child custody proceeding. Accordingly, substantial evidence supports the family

---

[2] Personal jurisdiction over a party is not necessary to make a child custody determination. (Iowa Code Ann. § 598B.201(3).) However, notice must be given. (Iowa Code Ann. § 598.205(1).)

court's finding that Iowa was T.N.'s home state for purposes of jurisdiction in the custody dispute.

### 4. *OTHER STATE*

While preference is given to home state jurisdiction, which would be Iowa's jurisdiction, we will address the other methods of obtaining jurisdiction for the sake of thoroughness. As set forth *ante*, jurisdiction may also be obtained if another state does not have jurisdiction. (§ 3421, subd. (a)(2).) As set forth *ante*, Iowa has home state jurisdiction. Therefore, jurisdiction may not be obtained in California due to another state lacking jurisdiction.

Jurisdiction may also be obtained if the child's home state declines to exercise jurisdiction on the grounds that another state is the more appropriate forum. (§ 3421, subd. (a)(2).) The record reflects that the Iowa judge "thought that Iowa was the proper place" for the custody dispute to be heard, and the Iowa judge confirmed Mother had a pending custody case in the Iowa court system. Thus, California could not obtain jurisdiction due to another state declining jurisdiction, since Iowa was willing to exercise jurisdiction.

### 5. *ALL COURTS*

Another method of obtaining jurisdiction is for all courts having jurisdiction to decline to exercise jurisdiction. (§ 3421, subd. (a)(3).) As set forth *ante*, Iowa is willing to exercise jurisdiction. Therefore, California cannot obtain jurisdiction in this manner.

11

A final means of obtaining jurisdiction occurs where no court in another state would have jurisdiction. (§ 3421, subd. (a)(4).) As set forth *ante*, Iowa has home state jurisdiction, which is the preferred means of obtaining jurisdiction. Accordingly, California cannot obtain jurisdiction in this manner because Iowa has jurisdiction.

### 6. *CONCLUSION*

In sum, the family court did not err. Substantial evidence supports the finding that Iowa has home state jurisdiction. Therefore, California lacks jurisdiction in this matter.

### B    SUBSTANTIAL EVIDENCE

Father asserts Mother failed to fully substantiate her Iowa residency. This contention repeats the jurisdiction issue set forth *ante*. As explained *ante*, the family court could find Mother's Iowa residency substantiated by: (1) Mother's September 2011 UCCJEA declaration reflecting her Iowa address; (2) Mother's January 2012 declaration in support of her motion to quash reflecting she and T.N. moved to Iowa in or around June 2010; and (3) Mother's June 2010 e-mail to Father, providing her address in Iowa. Accordingly, the family court did not err because there is credible evidence supporting its finding.

Father's argument is somewhat unclear, but it appears he is asserting Mother must provide an Iowa driver's license, voter registration, or some other type of official Iowa document to establish her Iowa residency. In support of this argument, Father cites the Iowa statute adopting the UCCJEA rule that home state jurisdiction is preferred. (Iowa Code Ann. § 598B.201(1)(a).) Jurisdiction under the UCCJEA is

12

about where the child has resided. (See *St. Clair v. Faulkner* (1981) 305 N.W.2d 441, 448 (Iowa).) In regard to proof, Iowa law requires a party to provide, under oath, the child's address(es) for the prior five years. (Iowa Code Ann. § 598B.209(1).) Father does not explain why Mother's UCCJEA declaration is insufficient proof for the child's residence. As a result, we find Father's argument to be unpersuasive.

Father contends the family court should have considered T.N.'s significant connections to California, since her residency in Iowa was not substantiated. (§ 3421, subd. (a)(2)(A).) As explained *ante*, substantial evidence supports the finding that Iowa has home state jurisdiction. (§ 3421, subd. (a)(1).) Accordingly, we do not need to address T.N.'s contacts with California, since home state jurisdiction is the preferred means of establishing jurisdiction. (*Zenide*, *supra*, 22 Cal.App.4th at p. 1294.)

## C. BIAS

Father contends the family court was biased in favor of Mother, and therefore abused its discretion. Father asserts the family court argued on behalf of Mother by raising arguments that Mother failed to raise.

It is unclear if Father's argument is based on state law or federal due process law. Under federal law, actual judicial bias need not be proven. Rather, it is sufficient to establish "the probability of bias on the part of [the] judge is so great as to become "'constitutionally intolerable.'" [Citation.] The standard is an objective one." (*People v. Freeman* (2010) 47 Cal.4th 993, 1001.) Under state law, the test is also objective; we consider whether a "reasonable person could doubt whether the trial was fair and impartial." (*Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 997.)

13

At the hearing on Father's motion for reconsideration, Father argued that the family court's reasoning was based upon arguments Mother did not make. The family court explained, "I have to decide based on the law. I am not going to make a decision I think is contrary to the law." Essentially, Father asserted the court had to select from Father's arguments or Mother's arguments, but the court explained there was a third option of following the law, if neither parties' argument were correct.

The family court did not show bias in favor of Mother by following the law. The family court was not bound by the parties' arguments. To the extent the family court rejected both parties' arguments and followed the law, the court was within its power to do so. (*In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 33 [a court's decision "cannot offend fixed legal principles"]; *In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138 [Fourth Dist, Div. Two] [a court's decision must be guided "by fixed legal principles"].) As set forth *ante*, the court's jurisdiction decision was supported by the evidence, and thus within the law.

Our review of the record reflects no bias in favor of Mother. The family court listened to Father and responded to his arguments. For example, the court explained to Father that Mother's attorney (1) did not accept service of the paternity paperwork, and (2) informed Father she could not accept service. When Father argued that Mother's attorney never informed him of being unable to accept service, the family court explained that the court had a letter addressed to Father reflecting the attorney could not accept service. The court then explained why the evidence showed Iowa was the best forum for the custody proceedings based upon the home state jurisdiction rule. There is

14

nothing reflecting the court's decision was constitutionally intolerable, or that the court was unfair and partial to Mother. The court's decision was in line with the law and evidence. In sum, the court was not biased in favor of Mother.

In his Appellant's Opening Brief, Father gives an example of the court's alleged bias by explaining that Father argued jurisdiction should be obtained via a long arm statute, due to Mother and T.N. having contacts with California. Father asserts Mother never refuted his reliance on *International Shoe Company v. State of Washington* (1945) 326 U.S. 310. Therefore, Father argues, when the court did not follow *International Shoe*, the court showed bias. Father's argument is not persuasive because the applicable exclusive law for jurisdiction in custody cases is section 3421, which the court followed—the applicable law is not *International Shoe*. The court was not showing bias, it was following the law.

D.    CONSENT

Father contends the family court erred because Father and the courts did not consent to Mother moving T.N. to Iowa. The record reflects Mother moved T.N. to Iowa in June 2010. The nullity proceedings, which did not include T.N., were filed in May 2010, and the amendment to add T.N. to the nullity proceedings was not properly served on Mother.[3] Thus, at the time Mother moved T.N. to Iowa there was not a pending case related to T.N., and Mother and Father were still married. Additionally, Mother informed Father, via e-mail, of T.N.'s new Iowa address, thus the child was not

---

[3] We infer Mother was improperly served based upon (1) the trial court vacating the custody orders, and (2) the motion to vacate being based upon improper service.

15

concealed from Father. Accordingly, it does not appear there was anything preventing Mother from moving T.N. to Iowa. At the time Mother moved, it appears she and Father were still husband and wife and no custody orders were in place, as a result, Mother could freely move with T.N. to Iowa. (See *People v. Howard* (1984) 36 Cal.3d 852, 856-857 [each spouse has full parental rights to custody of the child; a custody order must be in place for there to be custodial interference]; *Sarah B. v. Floyd B.* (2008) 159 Cal.App.4th 938, 944, fn. 5 [in the absence of a court order, parents share custody of a child, and one "'parent does not commit child stealing by taking exclusive possession of the child'"].)

    E.    <u>PERJURY</u>

Father contends Mother submitted to California's jurisdiction by availing herself of the California courts and perjuring herself in the Iowa courts, thus forfeiting jurisdiction in Iowa.

As set forth *ante*, section 3421, subdivision (a), provides the "exclusive jurisdictional basis for making a child custody determination." (§ 3421, subd. (b).) Within the statutory options for obtaining jurisdiction, the "home state" option is the preferred means of establishing jurisdiction. (*Zenide*, *supra*, 22 Cal.App.4th at p. 1294.) Therefore, it is not particularly relevant whether or not Mother availed herself of the California courts. The primary concern is T.N. and her home state for the six months prior to the custody case being filed. (§§ 3421, subd (a)(1), 3402, subd. (g).) Accordingly, we are not persuaded by Father's argument concerning Mother availing

16

herself of the California courts, since it fails to take into account the exclusive statutory means of establishing jurisdiction in child custody cases.  (§ 3421.)

Next, in regard to Mother allegedly perjuring herself in the Iowa courts, the appellate record in this case contains no information about perjury in the Iowa case, e.g. documents from Iowa.  Thus, even if we, being a California court, had the authority to consider Iowa's jurisdictional authority, we do not have a record to examine.  (*In re Marriage of Goosmann* (1994) 26 Cal.App.4th 838, 841, fn. 1 [it is appellant's burden to provide an adequate record on appeal]; Cal. Rules of Court, rule 8.120.)  In sum, we find Father's argument to be unpersuasive.

F.     SERVICE OF PROCESS

Father contends the family court erred by granting the motion to quash because Mother's attorney had accepted service of documents in the nullity proceeding, so she could accept service of the summons for Father's parentage petition.

A ruling quashing service is reviewed for substantial evidence if there is conflicting evidence, or reviewed independently if the evidence is not conflicting. (*Paneno v. Centres for Academic Programmes Abroad, Ltd.* (2004) 118 Cal.App.4th 1447, 1454.)  In the instant case, Father is essentially raising a legal question:  whether accepting service of the nullity documents sufficed to authorize Mother's attorney to accept service of the parentage petition summons—the evidence is not in conflict. Accordingly, we apply the independent standard of review, since the evidence is not conflicting.

17

A summons must be issued for an annulment case, and a summons must be issued for a parentage petition. (Cal. Rules of Court, rule 5.50(a)(1)(A)&(B).) Code of Civil Procedure section 415.40 provides, "A summons may be served on a person outside this state in any manner provided by this article or by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt. Service of a summons by this form of mail is deemed complete on the 10th day after such mailing."

Code of Civil Procedure section 416.90 provides, "A summons may be served on a person not otherwise specified in this article by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process."

Service of process statutes are liberally construed. (*Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 413 (*Summers*).) The liberal construction allows service to be effectuated and jurisdiction to be upheld "if actual notice has been received by the defendant," even if the statutes requirements were not strictly satisfied. (*Id*. at pp. 410-411.)

Thus, under the liberal construction, service can be effective where an attorney, on behalf of a client, is served if it is "'highly probable' that [the] defendant[] would receive actual notice of the service of process on [the attorney] upon their behalf." (*Warner Bros. Records, Inc. v. Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1018.) In making this determination, the "essential factor" is the attorney's relationship with the client, and whether it is "sufficiently close and enduring to make it reasonably

18

certain that [the defendant] would be apprised of the service on [the attorney] upon [the defendant's] behalf." (*Ibid.*)

However, "no California appellate court has gone so far as to uphold a service of process solely on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service." (*Summers*, *supra*, 140 Cal.App.4th at p. 414.)  In other words, there must be some statutory compliance when serving the summons.  "'[T]he burden is on the plaintiff to prove the existence of jurisdiction by proving, inter alia, the facts requisite to an effective service.'" (*Summers*, *supra*, 140 Cal.App.4th at p. 413.)

Father contends serving Mother's attorney was sufficient to apprise Mother of the parentage action because Mother's attorney accepted service of documents in the nullity proceeding.  Father offered no evidence to show Mother authorized her attorney to accept service of process as her agent in all matters.  His evidence only reflects Mother's attorney was authorized to accept service of process in the nullity action. Mother provided a letter from her attorney to Father reflecting the attorney was not authorized to accept service of process for matters beyond the annulment.  Accordingly, the record reflects Father did not comply with the statutory requirements because he failed to serve a person authorized to receive service of process.  (Code Civ. Proc., § 416.90.)

The question remains whether service could be upheld on the theory of a close connection between Mother and her attorney, making it "highly probable" that Mother would receive actual notice of the service of process.  There is no evidence in the record

to support the existence of a close relationship between Mother and her attorney. There is no evidence Mother was in frequent communication with her attorney. The record is devoid of any evidence of how large the attorney's office is, how often Mother contacted her attorney, or how often Mother spoke to other people in the attorney's office (assuming there *are* other people).

The only support Father offers for his argument is that the nullity documents were also served on Mother's attorney. Father's argument appears to be if service of process, even if totally outside the statutory prescriptions, has somehow resulted in actual notice to Mother, then any defects in the service should be overlooked. As set forth *ante*, no California appellate court has adopted this rationale because doing so "would constitute a judicial repeal of California's statutory law governing service of process and the adoption of only one rule: A summons may be served on anyone, anywhere, by any means which results in actual notice of the action in time to defend." (*Summers*, *supra*, 140 Cal.App.4th at p. 415.) Such a rule "would create a standardless free-for-all in which defendants would bring motions to quash service claiming they never received actual notice and, in many cases, plaintiffs would be unable to prove otherwise." (*Ibid*.)

Due to the lack of evidence supporting Father's argument, we conclude Father failed to meet his burden to show proper service of process. Accordingly, the family court did not err by granting the motion to quash. Since Mother's attorney was not authorized to accept the summons in the parentage proceeding, and the relationship between Mother and her attorney is unclear, the service was not proper. Therefore, the

service was correctly quashed because Mother resided in Iowa and had not been properly served.  (See Code of Civ. Proc., § 418.10, subd. (a)(1) [service may be quashed due to lack of jurisdiction].)

## DISPOSITION

The judgment is affirmed.  Respondent, J.C., is awarded her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                         J.

We concur:

RAMIREZ _____
                    P. J.

KING _____
                    J.