Filed 3/7/23  Casarez v. Taylor CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ESMERALDA CASAREZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> EMILY Y. TAYLOR, <br><br> Defendant and Appellant. | F082839 <br><br> (Super. Ct. No. BCV-20-101255) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment and order of the Superior Court of Kern County. David R. Lampe and Stephen D. Schuett, Judges.*

McCormick, Barstow, Sheppard, Wayte & Carruth and Todd W. Baxter for Defendant and Appellant.

KRA Legal, Kenechi R. Agu and Eric Sapir, for Plaintiff and Respondent.

-ooOoo-

---

\*      Judge Lampe entered the default judgment; Judge Schuett entered the order denying the motion to set aside entry of default and default judgment and to quash service of summons.

**SEE CONCURRING OPINION**

Defendant Emily Y. Taylor (Taylor) appeals from the default judgment against her and from the order denying her motion to set aside entry of default and default judgment and to quash service of summons. She contends, inter alia, that the attempted service of process on her by substituted service on a homeless man she occasionally permitted to do odd jobs for her, occasionally permitted to sleep in her garage, and permitted to receive food stamps at her address was invalid because he was not a competent member of her household, as required by statute. We agree that service was invalid, the default and default judgment subsequently entered were void, and the motion to set aside entry of default and default judgment should have been granted. We reverse the order denying defendant's motion to set aside entry of default and default judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Esmeralda Casarez filed a complaint against defendants Taylor and Luis E. Taylor, Jr., (Taylor's husband), alleging plaintiff was walking by defendants' residential premises when plaintiff was attacked and bitten by dogs that emerged from the premises. She allegedly sustained serious injuries as a result. On September 9, 2020, plaintiff filed a request for entry of default of both defendants. It was accompanied by proofs of service of summons, the complaint, and a statement of damages, showing substituted service on both defendants at the address of the premises. The proofs of service included declarations of a process server, stating he attempted to serve the defendants on seven occasions between June 1, 2020, and June 16, 2020, but the property was gated; he honked his horn but received no response. On the seventh attempt, he noted: "[S]aw kids playing, but when I called out, they went out of sight and no one came to fence. No further movement seen from the home. Possibly evasive." A different process server declared he attempted personal service on defendants on July 24, 2020, then performed substituted service on "Occupant, Freddie Herrera." The clerk of court entered default on September 9, 2020.

2.

On December 10, 2020, Taylor appeared in the trial court at a case management conference; plaintiff's counsel was not present. The trial court continued the matter to March 11, 2021, for a further case management conference, noting the reason for the next appearance was "Status of Default, and [Taylor] to seek legal advice."

On January 5, 2021, plaintiff filed a request for a court judgment with supporting documents. Plaintiff requested over $1 million in damages, including $18,282.27 in special damages, $1 million in general damages, plus costs and attorney fees. On February 5, 2021, plaintiff filed an amended request for court judgment, which omitted the request for attorney fees, lowered the amount of costs included, and asked for a total of $1,018,567.27.[1] Three days later, on February 8, 2021, the trial court entered default judgment in favor of plaintiff in the exact amount requested in the amended request.

On February 18, 2021, Taylor filed a motion to set aside entry of default and default judgment, and to quash service of summons or allow her to answer the complaint. The motion to set aside her default was based on Code of Civil Procedure sections 473.5 and 473, subdivisions (b) and (d).[2] The supporting papers included Taylor's declaration, which stated that her husband had been deceased since 2009, she was unaware of the lawsuit until she received paperwork notifying her of the December 10, 2020 case management conference, and she was surprised to learn that she and her husband had been sued. She received the paperwork in late November or early December 2020. She also received paperwork for entry of default judgment. She stated that Herrera, to whom the process server stated he delivered the summons and complaint to effect substituted service, did not live on her property; he did odd jobs for her about every month, did not always talk to her when he was on her property, and once in a while slept on her garage floor for a night. She stated Herrera was homeless; he started receiving food stamps at

---

[1]    Both requests for entry of default judgment omitted the request for $5 million in punitive damages that was included in the statement of damages.

[2]    All further statutory references are to the Code of Civil Procedure.

her address about a year before. He did not give her any paperwork or communicate with her about the lawsuit.

Herrera's declaration stated he did not remember receiving any paperwork while he was in Taylor's yard and did not give any paperwork to Taylor or tell her about the lawsuit. He stated he was homeless, did yard work or repairs for Taylor every three or four weeks, but she did not contact him to ask him to come; he did not always talk to her when he was there, and she did not always know what he was doing. Sometimes after he worked in her yard, he slept on the floor of her garage on a mat. He started receiving food stamps at her address. He did not live at Taylor's home and had only gone into it twice, to speak with Taylor's attorney about his declaration. His primary language is Spanish, but he understands some English. Taylor's attorney read the declaration to him in English, he understood it, and it was correct.

Plaintiff filed opposition to Taylor's motion. She presented the declaration of James Wimberly, the process server who delivered the summons and complaint to Herrera. He stated that, after the first process server attempted service seven times, he attempted to serve Taylor on July 24, 2020. He performed substituted service by delivery to Herrera at Taylor's residence; Herrera informed Wimberly that Herrera was an occupant of the residence. Wimberly left the documents with Herrera and informed him what they were. The following day, Wimberly mailed a copy of the documents to Taylor at the same address where he left them with Herrera. The documents Wimberly mailed were not returned.

Plaintiff's opposition included the declaration of plaintiff's attorney, which stated that in April 2020, he sent to defendants, via Federal Express, a letter notifying them of plaintiff's claim and asking that they preserve evidence. He received no response, so he filed the complaint. On August 10, 2020, he served discovery requests on defendants by mail, but received no response; the documents he mailed were not returned.

4.

The trial court denied Taylor's motion, finding the substituted service was proper and discounting the credibility of Taylor's declaration concerning her lack of notice of the lawsuit. Taylor appeals.

## DISCUSSION

Taylor moved to set aside the default and default judgment based on three statutory provisions: section 473, subdivision (b) (relief from a judgment or proceeding taken against the defendant through the defendant's mistake, inadvertence, surprise, or excusable neglect); section 473, subdivision (d) (setting aside a void judgment or order); and section 473.5 (relief from default or default judgment when service of summons has not resulted in actual notice to the defendant in time to defend). The trial court denied relief on all grounds. We conclude service of process was defective, the default and judgment were void, and relief should have been granted under section 473, subdivision (d).

Although we need not reach the issue, we have an additional concern about entry of the default judgment. The trial court's December 10, 2020 case management conference minute order continued the matter to March 11, 2021, and described the "Reason for next appearance" as "Status of Default, and [Taylor] to seek legal advice." While this language implied that Taylor would have until March 11, 2021, to consult counsel and attempt to set aside the default, the trial court entered default judgment on February 8, 2021. The trial court may have simply overlooked the prior order, but we have serious concerns about the equity of effectively lulling a defendant into a false sense of security, then allowing the plaintiff to quickly have a judgment entered while the defendant is trying to follow the trial court's instructions. We will not formally address this issue, however, because the threshold issue of the validity of service of process is dispositive.

5.

## I. Standard of Review

"The court … may, on motion of either party after notice to the other party, set aside any void judgment or order." (§ 473, subd. (d).) " '[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction. [Citation.] Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void.' " (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544 (*Ellard*).) "Where the question on appeal is whether the entry of default and the default judgment were void for lack of proper service of process, we review the trial court's determination de novo." (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1200.) If the trial court's determination requires factual findings, however, those findings will not be disturbed if supported by substantial evidence. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273.)

## II. Trial Court's Denial of Motion to Set Aside Entry of Default and Default Judgment

Section 473, subdivision (d), provides: "The court … may, on motion of either party after notice to the other party, set aside any void judgment or order." (§ 473, subd. (d).) Although the decision is not entirely clear, the trial court appears to have denied relief under section 473, subdivision (d) because it found the judgment was not void on its face. It seemed to believe it could grant Taylor relief under this provision only if the judgment was void on its face; in doing so, it could review only the judgment roll, and could not consider other evidence proffered by the parties. That conclusion was incorrect.

"Under section 473, subdivision (d), the court may set aside a default judgment which is valid on its face, but void, as a matter of law, due to improper service." (*Ellard*, *supra*, 94 Cal.App.4th at p. 544.) "Generally, defendants have six months from entry of judgment to move to vacate. [Citation.] But, if 'the judgment is void on its face, then the six[-]month limit set by section 473 to make other motions to vacate a judgment does not

6.

apply.' " (*Kremerman v. White* (2021) 71 Cal.App.5th 358, 369–370.)  Thus, if Taylor's motion was filed within six months after entry of default, it was timely even if the judgment was not void on its face.

Taylor's default was entered on September 9, 2020.  Her motion to set aside entry of default and default judgment was filed on February 18, 2021, less than six months after entry of default.  Consequently, the motion was timely to challenge a default valid on its face, but void due to improper service of process.  The trial court's consideration was not limited to the judgment roll.

In its discussion of Taylor's motion based on section 473, subdivision (b), the trial court concluded the motion was untimely, because it was filed more than six months after entry of Taylor's default.  That erroneous conclusion was apparently the basis for the trial court's belief that, in addressing the motion based on section 473, subdivision (d), it could only consider the judgment roll and whether the default and default judgment were void on the face of the record.  We must determine whether the judgment was valid on its face, but void for lack of service.

## III.    The Default and Default Judgment Were Void

When a defendant challenges a judgment on the ground it is void for lack of proper service, "the burden is on the plaintiff to prove the existence of jurisdiction by proving, inter alia, the facts requisite to an effective service." (*Dill v. Berquist Construction Co*. (1994) 24 Cal.App.4th 1426, 1439–1440 (*Dill*).)  "[B]ecause the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default." (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233.)  "An order denying relief from default ' "is subject to closer appellate scrutiny than one granting relief, and doubts will be resolved in favor of the party attempting to get to trial." ' " (*Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1473.)  Relief is particularly appropriate when it will not seriously prejudice the opposing party.  (*Elston*, at p. 235.)

A summons may be served on an individual "by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process." (§ 416.90.) If personal service under section 416.90 cannot be accomplished with reasonable diligence, an individual may be served by substituted service:

> "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in section … 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left. Service of a summons in this manner is deemed complete on the 10th day after the mailing." (§ 415.20, subdivision (b).)

The brief plaintiff filed in the trial court in support of entry of a default judgment asserted Taylor was "personally served" with the summons and complaint. The proof of service, however, reflected substituted service, by delivering the papers to "Freddie Herrera—Occupant," at Taylor's residence address. The evidence does not establish personal service. Accordingly, we consider whether the evidence shows proper substituted service on Taylor.

" 'The evident purpose of Code of Civil Procedure section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a *responsible person*. …' [Citation.] Service must be made upon a person whose 'relationship with the person to be served makes it more likely than not that they will deliver process to the named party.' " (*Bein v. Brechtel-Jochim Group, Inc*. (1992) 6 Cal.App.4th 1387, 1393 (*Bein*).) In this case, the burden was on plaintiff to prove Herrera was an appropriate person to serve as "a competent member of [Taylor's] household."

8.

In other contexts, the term "household" has been interpreted to mean: "[A] collection of persons, whether related or not, who live together as a group or unit of permanent or domestic character, with one head, under one roof or within a common curtilage, who direct their attention toward a common goal consisting of their mutual interests." (*Jacobs v. Fire Ins. Exchange* (1991) 227 Cal.App.3d 584, 594, fn. omitted [interpreting insurance policy]; accord, *O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 212 [interpreting domestic violence statutes].) "This judicial definition comports with the dictionary definition of household which provides: '[T]hose who dwell under the same roof and compose a family; *also*: a social unit comprised of those living together in the same dwelling.' " (*O'Kane*, at p. 212.)

Plaintiff did not establish Herrera fell within this definition. There was no evidence he lived with Taylor under the same roof, as a family or social unit; there was no evidence they lived together as a unit, on a permanent basis, "with one head," or with their attention directed toward a common goal consisting of their mutual interests. The evidence indicated Herrera was a homeless person who occasionally did odd jobs for Taylor and occasionally slept on the floor of her garage.

Substituted service has been found valid when made on the spouse of the defendant at their shared residence. (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 681.) In *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, the court upheld substituted service at the defendant's address on a person identified only as " 'John Doe, co-resident.' " (*Id*. at pp. 182–185). There, however, the defendant moved to set aside the judgment more than five years after default was entered. (*Id*. at p. 179.) Consequently, he was limited to challenging the judgment as void on its face; he was not permitted to rely on extrinsic evidence that, at the time of service, he lived elsewhere and the house where he was substitute served was occupied by a tenant. (*Id*. at pp. 180–181.)

In *Bein*, the Court of Appeal upheld a default judgment, finding the defendants were validly served through substituted service. (*Bein*, *supra*, 6 Cal.App.4th 1390.) Two

9.

individual defendants were served at their home, after three unsuccessful attempts, "by substitute service on a 'Linda Doe' when she emerged from the residence." (*Ibid*.) She then ran back into the house. (*Ibid*.) Another individual defendant lived in a gated community, where a gate guard stationed at the entrance denied the process server access to their residence. (*Id*. at pp. 1390–1391.) After unsuccessful attempts at personal service, the process server performed substituted service on the gate guard. (*Id*. at p. 1391.)

The court found substituted service on the gate guard was valid service on a "competent member of the household." (*Bein*, *supra*, 6 Cal.App.4th at pp. 1390, 1393.) The court stated: "The gate guard in this case must be considered a competent member of the household and the person apparently in charge. [The defendants] authorized the guard to control access to them and their residence. We therefore assume the relationship between [the defendants] and the guard ensures delivery of process." (*Id*. at p. 1393, fn. omitted.) The defendants "authorized the guard to control access to them and their residence." (*Ibid*.) Because of the relationship between the gate guard and the defendants, the court concluded it was "more likely than not that he would deliver process to [the defendants]." (*Id*. at pp. 1393–1394.) The court noted the defendants did not claim they failed to receive notice of service. (*Id*. at p. 1394.)

In *Ellard*, the gate guard at the defendants' residence address told the process server that the defendants had moved. (*Ellard*, *supra*, 94 Cal.App.4th at p. 542.) The plaintiffs' counsel obtained the defendants' new address from the United States Postal Service. The new address was a postal box at a private postal service store. The manager of the private postal service store knew the defendants and told the process server they received mail there. The process server served the defendants by substituted service, by delivering the documents to the manager and later mailing them to that address. (*Id*. at p. 543.) The court observed that "[i]t was the [private postal service store] manager's duty to deliver mail to the [defendants] as lessees of the post office box. Under these

circumstances, it was more likely than not the manager would deliver the summons and complaint as well." (*Id*. at p. 547.) The court found substitute service on the defendants under section 415.20, subdivision (b) was proper. (*Id*. at pp. 545, 547; accord, *Hearn v. Howard*, *supra*, 177 Cal.App.4th at pp. 1201–1203.)

In *Summers v. McClanahan* (2006) 140 Cal.App.4th 403 (*Summers*), the plaintiff's attorney served the summons and complaint on the defendant by service on her personal manager, Lawrence, as her authorized agent, at Lawrence's office. (*Id*. at pp. 405, 413.) Lawrence forwarded the papers to the defendant's attorney, who notified the defendant of the lawsuit. (*Id*. at pp. 405–406, 415.) The court concluded the plaintiff did not carry his burden of proving service was proper. (*Id*. at p. 413.) Lawrence was not involved in the transaction that was the subject of the plaintiff's lawsuit. (*Ibid*.) Lawrence testified her service to the defendant was to advise the defendant on defendant's career choices. (*Id*. at p. 415.) There was no evidence the defendant specifically authorized Lawrence to accept service of process as her agent, and Lawrence testified she was not so authorized. (*Id*. at p. 414.) The court also rejected the argument that there was such a close connection between the defendant and Lawrence that it was highly probable the defendant would receive actual notice of the service of process on Lawrence on the defendant's behalf. (*Ibid*.) There was no evidence they were in frequent communication, or had a close business or personal relationship, such that it would be highly likely Lawrence would inform the defendant she was being sued. (*Id*. at p. 415.)

Here, plaintiff attempted to serve Taylor at her residence, but was unable to serve her personally. Instead, the process server attempted substituted service by delivery of the papers to Herrera, whom the process server identified in the proof of service as an "Occupant." The evidence presented by Taylor was that Herrera was a homeless person who occasionally did odd jobs for her, was sometimes permitted to sleep in her garage, and was permitted to use her mailing address to receive food stamps. When he worked on her property, Herrera did not always communicate with her.

11.

Plaintiff had the burden of proof of proper service. In support of her claim of proper service, she presented only the process server's declaration that "Mr. Herrera informed me that he is an occupant of the residence." Plaintiff presented no evidence contradicting Taylor's and Herrera's declarations concerning their limited relationship. Plaintiff presented no evidence Herrera resided in Taylor's house with her or lived on the property on an ongoing basis. The process server did not declare that he served Herrera after he saw Herrera emerge from the house, or that Herrera entered the house after he received the papers. There was no evidence Herrera communicated with Taylor regularly, acted as her gate guard, acted on her behalf in any of her business or personal matters, or was authorized to receive mail or important legal documents on her behalf. The process server's statement that Herrera said he was an occupant does not constitute substantial evidence that Herrera was a "competent member of [Taylor's] household." We conclude substantial evidence does not support a conclusion that Herrera was a member of Taylor's household.

It has been said that the service of process statutes should be " ' "liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint." ' " (*Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778; accord, *Dill*, *supra*, 24 Cal.App.4th at pp. 1436–1437.) "Thus, substantial compliance is sufficient." (*Dill*, at p. 1437.) As stated in *Carol Gilbert, Inc. v. Haller* (2009) 179 Cal.App.4th 852: "We question whether service that does not comply with statutory requirements should ever be allowed to stand, over a defendant's challenge, as the basis for a default judgment. We think a distinction should be drawn between the sufficiency of service to *support a default judgment*, and the sufficiency of service for other purposes, including to *avoid dismissal* for want of prosecution." (*Id.* at pp. 864–865.) "The rule of liberal construction of service rules is designed to ' "uphold jurisdiction of the court, *thus*

*insuring the opportunity for a trial on the merits.*" ' " (*Id*. at p. 865.) Liberal construction to uphold a default judgment would have the opposite effect.

The court in *Carol Gilbert, Inc. v. Haller*, *supra*, 179 Cal.App.4th 852 concluded that, if substantial compliance is permitted at all in the default setting, "a finding of substantial compliance requires three preconditions. First, there must have been *some* degree of *compliance* with the offended statutory requirements. [Citations.] Second, the objective nature and circumstances of the attempted service must have made it ' " 'highly probable' " ' that it would impart the same notice as full compliance. [Citation.] Finally, it must in fact have imparted such notice, or at least sufficient notice to put the defendant on his defense." (*Id*. at pp. 865–866.)

In this case, there was little or no compliance with the requirement that the summons and complaint be served on a competent member of Taylor's household. Additionally, the second condition was not met. Attempted substituted service on a homeless man who occasionally did odd jobs on the property, occasionally was permitted to sleep on a mat on the floor of the garage, and was permitted to receive food stamps mailed to the address, did not make it highly probable that Taylor would receive notice of the lawsuit the same as if service had been made on an actual member of Taylor's household. Considering the situation from a practical standpoint (see *Pasadena Medi-Center Associates v. Superior Court*, *supra*, 9 Cal.3d at p. 778), a reasonable individual would not expect that, if named as a defendant in a lawsuit, the individual could be served with legal process by having it delivered to the person who did the individual's yard work and happened to be standing in the yard when the process server arrived. Further, there is no evidence the papers delivered to Herrera actually reached Taylor. Both Herrera and Taylor declared that they did not. Plaintiff presented no contrary evidence.

While the trial court disbelieved Taylor's statement that she did not receive any papers for this action by mail before November 2020, and implicitly found she had actual

13.

notice of the action earlier, actual notice of a lawsuit is not a substitute for proper service. (See *Summers*, *supra*, 140 Cal.App.4th at p. 415; *Honda Motor Co. v. Superior Court* (1992) 10 Cal.App.4th 1043, 1049 [" 'Mere knowledge of the action is not a substitute for service, nor does it raise any estoppel to contest the validity of service.' [Citation.] '[O]ur adherence to the law is required if we are ever to instill respect for it.' " (first bracketed insertion added)].)

We conclude that, even if the statute is liberally construed, the attempted service on Taylor by substituted service on Herrera failed to comply with the requirements of section 415.20, subdivision (a). Substantial evidence does not support a conclusion that Herrera was a member of Taylor's household or that there was such "a close connection between [Taylor] and [Herrera]" that it was " ' "highly probable" ' [Taylor] would receive actual notice of the service of process on [Herrera] on [Taylor's] behalf." (*Summers*, *supra*, 140 Cal.App.4th at p. 414.) We conclude the default and default judgment based on the invalid substituted service are void.

## DISPOSITION

The order denying Taylor's motion to set aside entry of default and default judgment and to quash service of summons is reversed. The matter is remanded to the trial court with directions to grant the motion and to set a reasonable time for her to file and serve her responsive pleading. The appeal from the default judgment is dismissed as moot. Defendant is awarded her costs on appeal.

HILL, P. J.

I CONCUR:

DETJEN, J.

14.

SNAUFFER, J., Concurring.

I agree with the majority that the judgment should be set aside but for a different reason than the majority. I would conclude the trial court abused its discretion in not setting aside the judgment under Code of Civil Procedure section 473, subdivision (b),[1] on the ground of surprise. The court continued the December 10, 2020, case management conference to March 11, 2021, for Taylor "to seek legal advice." In my view, and apparently in the majority's view also, this would have led a self-represented litigant to trust that no adverse action would be taken against her, including the entry of judgment, before the continued case management conference. Yet the same judge entered judgment on February 8, 2021, well ahead of the continued case management conference. Taylor would have had no reason to expect that would happen. However, she acted promptly, moving to set aside the judgment and entry of default 10 days after the judgment was entered. I would conclude the trial court abused its discretion by not vacating the judgment under section 473, subdivision (b), on the ground that Taylor would have been surprised by the entry of judgment before the continued case management conference.

I disagree with the majority that the judgment is void for invalid service of process and thus can be set aside under section 473, subdivision (d), which provides a trial court may, on motion of either party after notice to the other party, set aside any void judgment or order. (§ 473, subd. (d).) The majority concludes the judgment is void in that Casarez did not comply with section 415.20, subdivision (b), largely because Freddie Herrera was not a "competent member of Taylor's household" and thus substitute service could not be made on him.

My primary disagreement is that the majority does not give due deference to the trial court's credibility findings. The majority correctly notes that the trial court's

---

[1] All statutory references are to the Code of Civil Procedure.

determination whether a judgment is void is reviewed de novo. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020.) But when the trial court's determination of whether a judgment is void requires factual findings, those findings will not be disturbed if supported by substantial evidence. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273.) This standard requires deference to the trial court's factual findings and credibility determinations. "Under the deferential substantial evidence standard of review, we 'liberally construe[ ]' findings of fact 'to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings.' [Citation.] 'We may not reweigh the evidence and are bound by the trial court's credibility determinations.' [Citation.] Testimony believed by the trial court 'may be rejected only when it is inherently improbably or incredible, i.e., " 'unbelievable *per se*' " physically impossible or " 'wholly unacceptable to reasonable minds.' " ' " (*McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257.) Even so, the judge may "disregard the testimony of any witness[] … when he is satisfied that the witness is not telling the truth or his testimony is inherently improbable[.]" (*Tom Thumb Glove Co. v. Han* (1978) 78 Cal.App.3d 1, 5.) We presume the lower court is correct "and imply findings that are necessary to support the judgment." (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 169.) We also "indulge every reasonable inference and presumption in favor of the trial court's findings." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 40.)

In sum, whether Herrera was a competent member of Taylor's household is a question reviewed de novo; but in making this de novo determination, we must defer to the trial court's relevant factual findings and credibility determinations, both express and implied.

A crucial credibility determination is that the trial court apparently fully credited Wimberly's proof of service and declaration, which stated that Herrera identified himself to Wimberly as an "occupant" of Taylor's house. The trial court apparently believed that

2.

Herrera told Wimberly he was an "occupant," and the trial court was entitled to believe this. In his declaration, Herrera does not deny that he identified himself as an occupant to Wimberly. Instead, to contradict Wimberly's declaration, Taylor resorts to the assertions in her and Herrera's declarations that Herrera was homeless, had never been inside Taylor's house before the day of the purported substitute service, and only slept on the property in the garage about once a month. The trial court was free to disbelieve these assertions.

Moreover, Taylor's admissions that Herrera had been receiving food stamps at her house for about a year and that he was allowed to sleep in her garage are consistent with Herrera being a member of her household. The trial court did not have to believe Taylor and Herrera's attempts to walk back Herrera's statement to Wimberly that he was an "occupant" of Taylor's house.

The majority appears to give full credit to Taylor and Herrera's declarations, although the trial court did not. The majority does not explain why the lower court was precluded from making the findings it did. I would conclude, based on the relevant evidence and trial court findings, that service of process was valid, the court obtained jurisdiction over Taylor, and that the court was thus correct to deny relief under section 473, subdivision (d). But as explained above, I would still reverse on section 473, subdivision (b), grounds.

SNAUFFER, J.

3.