[No. H033193. Sixth Dist. Nov. 24, 2009.]

CAROL GILBERT, INC., Plaintiff and Respondent, v.
AMIT HALLER, Defendant and Appellant.

**COUNSEL**

Carr & Ferrell, Stuart C. Clark and Christopher P. Grewe for Defendant and Appellant.

Janin, Morgan & Brenner, David B. Tillotson and John A. Lofton for Plaintiff and Respondent.

**OPINION**

**RUSHING, P. J.**—Plaintiff Carol Gilbert, Inc., sought to join defendant Amit Haller in this action as a Doe defendant, but served a summons on him that omitted the statutory notice that he was served by that fictitious name. When Haller failed to answer, plaintiff secured a default judgment for some $40,000. The trial court denied Haller's motion to vacate the judgment,

reasoning that the papers served gave him actual notice of the suit and substantially complied with statutory requirements. We question whether such a rationale can ever sustain a default judgment over a defendant's objection that service did not comply with statutory requirements. Assuming.it can, a finding of substantial compliance can only be sustained where (1) the record shows partial or colorable compliance with the requirement on which the objection is predicated; (2) the service relied upon by the plaintiff imparted actual notice to the defendant that the suit was pending and that he was bound to defend; and (3) the manner and objective circumstances of service were such as to make it highly likely that it would impart such notice. Because the first of these requirements was not met here, we will reverse the order denying defendant's motion to vacate.

## BACKGROUND

On or about February 1, 2006, plaintiff filed a complaint naming Stoa Restaurant and Wine Bar (Stoa), Yoav Gilat, and Does 1 through 25 as defendants.[1] She alleged a single cause of action for breach of a contract signed by defendant Gilat on or around March 10, 2004, engaging plaintiff as exclusive agent to locate a suitable property for a restaurant. Plaintiff alleged that she found numerous properties, including one at 632 Emerson Street in Palo Alto, which she repeatedly brought to Gilat's attention. In May, Gilat gave notice that he was terminating the contract. Although it was terminable only for cause, plaintiff agreed to its termination, while reminding Gilat of the properties she had already identified. Shortly after termination, she alleged, defendants negotiated a lease for the Emerson Street property. They had, she continued, "terminated the Contract for the purpose of avoiding the payment of [her] commission in violation of the Termination clause of the contract." She prayed for $30,000 "or such other amount that CGI is owed as commission under the Contract, to be proved at trial," plus interest and costs.

The complaint's only allegations concerning fictitiously named defendants were, "Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 25, inclusive ('Does'), and therefore sues these Defendants by such fictitious names and will ask leave of the court to amend this Complaint to show their true names and capacities when the same are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the

---

[1] Plaintiff corporation appears to have been acting at all times through its principal and namesake, Carol Gilbert. For convenience, we will generally refer to her as plaintiff.

Defendants designated by such fictitious name could or may assert interest [*sic*] in the subject matter of this litigation." It was alleged that each of the defendants was acting at all times as the agent and employee of each other defendant.

Summons was served on Gilat, personally and on behalf of Stoa, on February 22, 2006. On April 15, 2006, Gilat promulgated, and apparently served, a document entitled "Defendant Answer: Yoav Gilat," which the court accepted as a responsive pleading, though it was not in proper form.[2] In it Gilat stated that in operating the restaurant, which had closed after five months, he had acted at all times as the agent of the restaurant's owners. He acknowledged that he was a partner in the restaurant or in one or both of two entities that owned it, but asserted that under the partnership agreement he was not liable for "guaranteed [liabilities] of the partnership," and therefore "should be exempt from this matter." He identified Haller as one of seven "legal entities and individuals that held interest in STOA restaurant." He further asserted that in his first meeting with plaintiff, he had informed her that another realtor had already shown him the Emerson Street location, among others. To reflect this fact he had interlineated plaintiff's contract to expressly except " 'sites shown by Mike Costa (Terranomics).' " He made numerous further assertions in derogation of plaintiff's claims.

Plaintiff's attorney later declared that based on this pleading and ensuing conversations with Gilat, he concluded that Haller was "a principal of Defendant STOA, and likely the real party in interest in this case." On or about April 25, 2006, he filed on plaintiff's behalf an "Amendment Substituting True Name for Fictitious Name (C.C.P. § 474)," which recited that plaintiff had "learned the true name of the defendant designated in the Complaint as Doe I, and substitutes the true name, Amit Haller, for the fictitious name whenever it appears in the Complaint."

On May 7, 2006, a process server handed Haller, at his home, copies of a summons, the complaint, and the Doe amendment. Plaintiff filed a declaration of service on May 16, 2006. It stated that the "*name of party as shown on documents served*" was "AMIT HALLER sued herein as DOE 1." However, the copy of the summons actually received by Haller, and eventually filed by him with the court, was left blank in the space designated to notify him that he was sued as a fictitiously named defendant. It appeared as follows:

---

[2] Perhaps because it did not conform to the rules governing the form of pleadings, the document was not filed until May 19. Counsel for plaintiff apparently saw it before April 25, because he later cited it, and "subsequent" discussions with Gilat, as the source of his belief that the restaurant was owned by a partnership of which defendant Haller was a member. Haller later averred that he was an "investor in the limited liability company that owns STOA," but had "never had any involvement" in the latter's "day to day management."

EXHIBIT B

Consistent with this appearance, the second page of the declaration of service also stated that "The 'Notice to the Person Served' (on the summons) was completed" to show service "as an individual defendant" and did not claim to have shown service "as the person sued under the fictitious name of (*specify*)."

On June 13, 2006, at plaintiff's request, the clerk entered Haller's default. The clerk subsequently entered Stoa's default. The clerk refused to enter judgment, however, on the ground that, Gilat having answered the complaint, any default judgment must be entered by the court. Plaintiff thereafter caused Gilat to be dismissed from the action without prejudice. On November 15, 2006, the clerk again refused to enter judgment on the ground that accrued interest could not be calculated from the face of the complaint.

On January 25, 2007, plaintiff submitted declarations in support of an application for a default judgment. She in substance repeated the allegations of the complaint, i.e., that she had identified numerous properties including Emerson Street, and that defendants had terminated the contract to avoid paying her commission. She did not address the assertions in Gilat's answer that the Emerson property had been brought to his attention by another agent and expressly excluded from the contract. Her attorney filed a declaration to the effect that she had incurred attorney fees of $4,330. On February 2, 2007, the court entered a judgment by default against Haller and Stoa in the amount of $41,713. On March 6, 2007, plaintiff served notice of entry of judgment.

Nearly a year later, on February 5, 2008, plaintiff's counsel caused an earnings withholding order to be served on Haller's employer. Some time thereafter Haller was served with a notice of creditor's examination. He thereupon filed a motion to vacate the judgment and set aside the default on the grounds that they were void. In the motion he contended that "he was not properly named as a defendant in substitution for Doe 1, nor was he properly

served under Code of Civil Procedure section 474." In the supporting memorandum, he asserted that the judgment was deficient in numerous respects, including that the summons served on him did not comply with Code of Civil Procedure section 474 (section 474), which requires that such a summons notify the recipient that he is sued as a fictitiously named defendant.

On June 13, 2008, the court denied the motion to vacate, finding that Haller had actual notice of the suit and that Gilbert had "substantially complied with Code of Civil Procedure section 474 by filing an 'Amendment Substituting True Name for Fictitious Name' on April 25, 2006."[3] Haller filed a notice of appeal on July 23, 2008.

## DISCUSSION

### I. Compliance with Notice Requirement

Defendant sought to vacate the judgment under Code of Civil Procedure section 473, subdivision (d), which empowers the trial court, on motion of any party, to "set aside any void judgment or order." The ultimate question, then, is whether the judgment was void. Defendant contends that it was rendered void by deficient service of process. His chief challenge is that the summons served on him did not contain the notice required by section 474, as follows: "[N]o default or default judgment shall be entered . . . unless it appears that the copy of the summons or other process . . . stat[es] in substance: 'To the person served: You are hereby served in the within action (or proceedings) as (or on behalf of) the person sued under the fictitious name of (designating it).' "

The form of summons used in this state is intended to facilitate compliance with the foregoing requirement by providing a checkbox whereby the serving party can indicate that the recipient is being served as a person sued under a fictitious name, with the name to be written on the form at that point. (See image at p. 857, *ante*.) The summons served here had not been so marked. It was only marked to show service on defendant "as an individual defendant." Contrary to some of defendant's suggestions, there was nothing affirmatively

---

[3] The court wrote: "[S]trict compliance with the service of summons statutes is not required. Rather, the statutory provisions regarding service of process are liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant. [Citation.] The court finds that plaintiff . . . substantially complied with Code of Civil Procedure section 474 by filing an 'Amendment Substituting True Name for Fictitious Name' on April 25, 2006. Defendant had actual notice of the lawsuit by receipt a copy of the Complaint, Summons, and 'Amendment Substituting True Name for Fictitious Name.' [Citation.]"

misleading about checking this box; he *was* being served as an individual defendant, rather than on behalf of a corporation or other entity. There was no harm in telling him so. The problem lies in the failure to check the box and fill in the blank so as to "stat[e] in substance" that he was sued as the person named in the accompanying pleadings as Doe 1. (§ 474.)

The complete absence of the required notice from the summons seems a clear violation of the statute. Plaintiff's only real argument to the contrary is that in contrast to the otherwise similar notice requirement concerning service on behalf of a corporation, section 474 permits the notice to appear in "the summons *or other process*, or, if there be no summons or process, the copy of the first pleading or notice served upon such defendant . . . ." (§ 474; cf. Code Civ. Proc., § 412.30 (section 412.30) [notice must appear in "the copy of the summons that is served"].) Plaintiff contends that she gave defendant the required notice, at least " 'in substance,' " by serving a copy of the amendment identifying him as Doe 1.

This contention rests on the supposition that the amendment constituted "other process." It did not. As used in the Code of Civil Procedure, " 'process' " means "a writ or summons issued in the course of judicial proceedings." (Code Civ. Proc., § 17, subd. (b)(6).) " '[W]rit' " in turn means "an order or precept in writing, *issued in the name of* the people, or of *a court or judicial officer* . . . ." (*Ibid.*, italics added.) In other words, "process" means an instrument resembling a summons in that it is issued *by or on behalf of the court*. (See *Meadows v. Bakersfield S. & L. Assn.* (1969) 250 Cal.App.2d 749, 753 [59 Cal.Rptr. 34], quoting Bouvier's Law Dict. (3d ed.) p. 2731 [process is " '[t]he means of compelling a defendant to appear in court . . . [;] [a] writ, warrant, subpoena, or other formal writing issued by authority of law' "]; *Lobrovich v. Georgison* (1956) 144 Cal.App.2d 567, 574 [301 P.2d 460] ["Process is a means whereby a court compels a compliance with its demands."]; *Lister v. Superior Court* (1979) 98 Cal.App.3d 64, 71 [159 Cal.Rptr. 280] [acknowledging broader sense, but refusing to apply it to statute defining contempts so as to include disrespect for letter issued by clerk].)

The function of the phrase "or other process" in section 474 is to address situations where the defendant is served with an instrument, other than a summons, by which the *court* commands some action. The statute embraces a third situation—where the paper served is neither a writ *nor* a summons—but the operation of that phrase is limited to those situations where there "no summons or process" is served. (§ 474.) Where a writ or summons is served, as it was here, the notice must appear in that document, and its appearance in some other document will not comply with the statute.

Nor have we found any authority suggesting otherwise. On the contrary, such omissions are uniformly held to violate the statutory requirements. In *Fuss v. City of Los Angeles* (1958) 162 Cal.App.2d 643, 646 [328 P.2d 831], the trial court was held to have properly granted a corporate defendant's motion to quash on the ground, among others, that the summons lacked the notice required by section 474. In *Armstrong v. Superior Court* (1956) 144 Cal.App.2d 420 [301 P.2d 51], the plaintiff served a summons that "did not bear the endorsement required by section 474, Code of Civil Procedure." (*Id.* at p. 422.) The trial court denied Armstrong's motion to quash. The reviewing court issued a writ commanding the court to grant the motion. It held the summons "fatally defective in not being endorsed so as to show that the petitioner was served as one of the persons sued under a fictitious name." (*Id.* at p. 424.)

Courts have similarly applied the statutory requirement of notice where the recipient is served on behalf of a corporation. (§ 412.30;[4] see Code Civ. Proc., former § 410.) In *National Union Fire Ins. Co. v. Superior Court* (1966) 247 Cal.App.2d 326 [55 Cal.Rptr. 574], the question was whether the plaintiff had effected service on a corporation within the three years allowed by statute. (Code Civ. Proc., former § 581a; see now Code Civ. Proc., § 583.210 et seq.) The summons and complaint had been delivered to a vice-president, who was told he was being served on behalf of the corporation, and the return of service so stated. But the summons itself was left blank in the space provided for the statutory notice. After discussing *Armstrong*, the court concluded that the corporate notice requirements were "likewise mandatory and that the purported service of summons upon [the corporation] was . . . ineffective." (247 Cal.App.2d at p. 329.) As a result, the service was fatally deficient, and the defendant was entitled to dismissal for want of prosecution.

The effectiveness of service to avoid the three-year dismissal statute was also at issue in *Tresway Aero, Inc. v. Superior Court* (1971) 5 Cal.3d 431, 433 [96 Cal.Rptr. 571, 487 P.2d 1211], where the summons also lacked the required notice. The court declared that the provisions of the statute "are mandatory, and service of a summons which does not comply with those provisions is ineffective." (*Id.* at p. 435.) However, the defendant was estopped from asserting the defect by its conduct in obtaining an extension of time, which prevented the plaintiff from discovering the defect in time to remedy it. (*Id.* at pp. 440–442.)

---

[4] Section 412.30 provides in part, "[T]he copy of the summons that is served shall contain a notice stating in substance: 'To the person served: You are hereby served in the within action . . . on behalf of (here state the name of the corporation or the unincorporated association) as a person upon whom a copy of the summons and of the complaint may be delivered to effect service on said party . . . .' . . . [¶] If such notice does not appear on the copy of the summons served, no default may be taken against such corporation . . . ."

■    In *MJS Enterprises, Inc. v. Superior Court* (1984) 153 Cal.App.3d 555 [200 Cal.Rptr. 286] (*MJS*), the trial court denied a corporate defendant's motion to set aside a default and quash service on grounds of defective service. The summons had been served on an individual who was himself a defendant in the action, stating only that he was served as an individual. The reviewing court concluded that the summons was "fatally defective" because it "did not contain the mandatory notice required by law [citations] and does not otherwise in any manner indicate an attempt to assert judicial power over" the corporation. (*Id.* at p. 558, fn. omitted.) The court wrote, "The form of a summons is prescribed by law, and this form must be substantially observed. [Citation.] Service of a substantially defective summons does not confer jurisdiction over a party [citation] and will not support a default judgment. [Citation.] Notice of the litigation does not confer personal jurisdiction absent substantial compliance with the statutory requirements for service of summons. [Citation.]" (*Id.* at p. 557.) Under the circumstances before it, the statute "expressly prohibited" the entry of default. (*Id.* at p. 558.) Accordingly, the default judgment was "void for lack of personal jurisdiction," and the trial court should have granted the motion to vacate it. (*Id.* at pp. 558–559.) Rejecting a claim of substantial compliance (see pt. II, *post*) the court wrote, "We agree with plaintiffs' assertion that the statutes should be liberally construed to uphold jurisdiction where the defendant receives actual notice it is being sued. However, liberal construction cannot cure plaintiffs' complete failure to comply with section 412.30." (153 Cal.App.3d at p. 558.)

In *Mannesmann DeMag, Ltd. v. Superior Court* (1985) 172 Cal.App.3d 1118 [218 Cal.Rptr. 632] (*Mannesmann*), the question was again whether the plaintiff had served and returned summons within three years to as to avoid dismissal for failure to prosecute. (See Code Civ. Proc., § 583.210 et seq.) The documents served on the corporate defendant consisted of the original complaint, in which it was not named; a subsequent amendment naming it; and a summons in which none of the boxes had been checked to indicate on whose behalf the recipient was served. (*Mannesmann, supra*, 172 Cal.App.3d at p. 1122.) The court wrote, " 'A summons is the process by which a court acquires personal jurisdiction over a defendant in a civil action' (*MJS*[, *supra*, 153 Cal.App.3d at p. 557]), and a defendant has an absolute right to demand that process be issued against him in a manner prescribed by law. As a general rule, however, the provisions of the rules governing service of process are to be liberally construed. [Citations.]" (*Id.* at p. 1122.) The court held the matter was "not a case of substantial compliance but one of no compliance at all . . . [citation], and liberal construction cannot cure a complete failure to comply" with the statute. (*Id.* at p. 1123.)

The summons served on Haller did not comply with the statutory requirement. We therefore turn to the question whether it *substantially* complied with the statute so as to nonetheless confer jurisdiction over defendant.

## II.  Substantial Compliance

The trial court concluded that the papers served on Haller were sufficient to, and did in fact, impart actual notice that he was being sued, and that in view of this fact, the service on him substantially complied with statutory requirements, and was valid. This view of the case is difficult to reconcile with the cases we have already cited, particularly *MJS, supra*, 153 Cal.App.3d at page 558, and *Mannesmann, supra*, 172 Cal.App.3d at page 1123, both of which acknowledge the possibility of upholding service based on substantial compliance, but hold in essence that a summons *completely lacking the required notice* cannot be found to substantially comply. As will appear, we indeed conclude that such a complete failure precludes reliance on the doctrine of substantial compliance.

Plaintiff cites, and we know of, only one case in which a defective summons has been saved by a square holding of substantial compliance. In *Cory v. Crocker National Bank* (1981) 123 Cal.App.3d 665 [177 Cal.Rptr. 150] (*Cory*), the plaintiff attempted to serve a bank by delivering to one of its officers a summons on which the relevant space had been only partially completed. A checkmark had been placed next to the notation, "CCP 416.10 (Corporation)," but the name of the entity served was omitted, and the paramount notation—that the recipient was served "on behalf of" another— was left unchecked. (*Id.* at p. 668, fn. 1.) Upon delivery, the summons was apparently stamped by bank personnel, acknowledging its receipt on behalf of the bank. (See *id.* at p. 667.) Further, as the court explicitly emphasized, the only defendants named in the complaint were the bank and Does. (*Ibid.*) The court concluded that under these circumstances, service was effective. After acknowledging that "the provisions of section 412.30 are mandatory," it continued: "[A]ll that is required is *substantial compliance* in order to render the service of summons upon a corporation effective. [Citation.] Section 412.30 does not say that any specific words must be used in the notice only that the notice shall state 'in substance' the provisions of the section." (*Id.* at p. 669.) The court concluded that this requirement was satisfied, based primarily if not entirely on two considerations: (1) the relevant section of the summons had been *partially* completed, and in a way that could alert the recipient—by consulting the cited statute—that he was served on behalf of

his corporate principal; and (2) by stamping the summons with his employer's seal, as it were, he or another employee vicariously admitted that service had been made on the employer's behalf, and not the recipient's own. (See *id.* at pp. 670–671.)

Whatever the soundness of this reasoning, it cannot produce the same result here, where these factors have no parallels. Nothing in the summons hinted to Haller, let alone "made clear" to him, that the summons was served on him as Doe 1. The summons made no reference to the statute governing such service. Nor does anything in his conduct show that he knew the summons did, or was intended to, hale him personally into court. His very inaction suggests the opposite, i.e., that he did not understand the summons required him to answer on pain of an adverse judgment. At best the question of his understanding and belief is open to doubt and dispute.

Plaintiff emphasizes *Cory*'s observation that the 1969 amendments to the statutes governing service of process are to be liberally construed to preserve jurisdiction. (*Cory, supra,* 123 Cal.App.3d at p. 670.) That passage in turn relied heavily on *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180], where the court attributed such an intention to the "draftsmen" of those amendments, as supposedly stated in a report by a special Judicial Council committee.[5] In *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 408, footnote 8 [44 Cal.Rptr.3d 338] (*Summers*), the court concluded that the report cited for this fact does not "exist," but that California's laws on service of process should nonetheless be viewed as part of a nationwide trend toward "a liberal, practical approach to service of process issues." (*Id.* at p. 408.) As an illustration it quoted the Fourth Circuit's 1963 holding that " 'where actual notice of the commencement of the action and the duty to defend has been received by the one served, the provisions of [the applicable federal rule] should be liberally construed to effectuate service and uphold jurisdiction of

---

[5] The original passage quoted in *Cory* appears as follows in *Pasadena Medi-Center Associates, supra,* 9 Cal.3d 773, 778: "Although some decisions under pre-1969 statutes required strict and exact compliance with the statutory requirements (see 2 Witkin, Cal. Procedure (2d ed. 1970) pp. 1390, 1413–1415), *the provisions of the new law, according to its draftsmen, 'are to be liberally construed.* . . . As stated in the Nov. 25, 1968, *Report of the Judicial Council's Special Committee* on Jurisdiction, pp. 14–15: "The provisions of this chapter should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint. . . ." The liberal construction rule, it is anticipated, will eliminate unnecessary, time-consuming, and costly disputes over legal technicalities, without prejudicing the right of defendants to proper notice of court proceedings.' (Li, Attorney's Guide to Cal. Jurisdiction and Process (Cont.Ed.Bar (1970) pp. 57–58.)" (Italics added.)

the court, thus insuring the opportunity for a trial on the merits.' " (*Id.* at p. 409, quoting *Karlsson v. Rabinowitz* (4th Cir. 1963) 318 F.2d 666, 668, fn. & italics omitted.)

While endorsing this overall approach, the court in *Summers* joined *Mannesman* and *MJS* in refusing to overlook the defects before it on grounds of substantial compliance. The trial court had denied a motion by the defendant, a natural person, to set aside a $3.7 million default judgment. Service had been made on another person under a statute permitting service on one who is "authorized by [the person served] to receive service of process." (Code Civ. Proc., § 416.90.) The trial court found that the recipient of the summons had *not* been authorized to accept service on the defendant's behalf, but nonetheless upheld the service on grounds that it substantially complied with the statute in that the original recipient had forwarded the summons and complaint to the defendant's usual attorney, who corresponded with the plaintiff's attorney about it.

After noting the trend toward liberal construction of statutory requirements to uphold jurisdiction where the defendant has received actual notice, the court concluded that service on a person not authorized to accept it may be found to constitute substantial compliance if it appears " ' "highly probable" ' " that the service will result in actual notice to the defendant, as where service is made on the target's spouse.[6] (*Summers, supra,* 140 Cal.App.4th at p. 414; see *id.* at pp. 412, 413; *Warner Bros. Records, Inc. v. Golden West Music Sales* (1974) 36 Cal.App.3d 1012, 1018 [112 Cal.Rptr. 71].) But it went on to hold that this test was not satisfied on the facts before it, because there was no evidence that the person to whom the summons was actually delivered had such a "close relationship" with the defendant that she could be expected to transmit them to her, as a spouse might be. Indeed, she had not done so; instead she had transmitted them to the defendant's attorney. Nor could the defendant's ultimate receipt of the papers, by itself, justify the denial of the motion. As the court noted, no California opinion had yet held that actual notice alone was enough to sustain service that did not comply with the statute. (*Summers,* at pp. 414, 415.) To adopt such a regime would effect a "judicial repeal of California's statutory law governing service of process." (*Id.* at p. 415.) It would also generate increased litigation on service issues by "creat[ing] a standardless free-for-all." (*Ibid.*)

We question whether service that does not comply with statutory requirements should ever be allowed to stand, over a defendant's challenge, as the

---

[6] The court relied primarily on *Doherty & Co. v. Goodman* (1935) 294 U.S. 623 [79 L.Ed. 1097, 55 S.Ct. 553], where the question was whether a local *statute* violated *due process* by authorizing service on a person not specifically appointed to receive it. (*Summers, supra,* 140 Cal.App.4th at p. 412.) One might question whether the limits of federal due process provide an ideal guide to the application of local statutory prescriptions.

basis for a default judgment. We think a distinction should be drawn between the sufficiency of service to *support a default judgment*, and the sufficiency of service for other purposes, including to *avoid dismissal* for want of prosecution. Indeed, such a reading is implied by the statute itself, which provides that where the summons does not contain the statutory notice, "no default or default judgment shall be entered." (§ 474; see § 412.30 ["If such notice does not appear . . . no default may be taken . . . ."].) The rule of liberal construction of service rules is designed to " 'uphold jurisdiction of the court, *thus insuring the opportunity for a trial on the merits.*' " (*Summers, supra,* 140 Cal.App.4th 403, 409, quoting *Karlsson v. Rabinowitz, supra,* 318 F.2d 666, 668, italics added & omitted.) Insofar as a default judgment may be considered a trial on the merits at all, it possesses the most summary, indeed perfunctory character our law knows. It reflects imposition upon the defendant of a complete forfeiture of his right to present a defense. The chief justification for such a procedure is one of necessity, for without it a defendant could avoid responsibility for his actions by the irresistible expedient of ignoring the plaintiff's claims. From this perspective the chief function of a summons is to command the defendant to respond to the plaintiff's claims or suffer a judgment based upon them. But if the summons is defective, it has some tendency *in itself* to deprive the defendant of the unmistakable notice to which he is entitled. At least one court has declared, though in a different setting, that a defendant served with defective process was not at fault for "ignoring service," because he "was under no duty to act upon a defectively served summons." (*Slaughter v. Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1251 [209 Cal.Rptr. 189].)

At worst, where defects in service are asserted in derogation of a default judgment, it may be said that both parties are at fault—the plaintiff for not ensuring that service fully complied with the governing statutes, and the defendant for ignoring whatever service was attempted. The question must therefore be *who should bear the burden* of the difficulty thus created. Arguably, that question should be resolved against the plaintiff, on the grounds both that his is the first and best opportunity to obviate the difficulty, and that the defendant will otherwise incur a forfeiture. The situation is different, however—it is essentially reversed—when the defendant comes into court acknowledging that he has been sued, but seeking to *dismiss the action* on the ground that the service, though practically effective, was technically defective. Now it is the plaintiff who is exposed to the forfeiture of his case, and the defendant who seeks to prevent an adjudication on the merits.

We need not decide, however, whether a rule of substantial compliance should be flatly excluded in the default setting, because such a rule, properly understood, would not permit us to overlook the defects here. In our view, a finding of substantial compliance requires three preconditions. First,

there must have been *some* degree of *compliance* with the offended statutory requirements. (See *MJS, supra*, 153 Cal.App.3d 555, 558 [no substantial compliance where "complete failure to comply" with cited requirement]; *Mannesmann, supra*, 172 Cal.App.3d 1118, 1123 [same, "no compliance at all"]; cf. *Cory, supra*, 123 Cal.App.3d 665 [relevant section of summons partially filled in, citing relevant statute].) Second, the objective nature and circumstances of the attempted service must have made it " ' "highly probable" ' " that it would impart the same notice as full compliance. (*Summers, supra*, 140 Cal.App.4th at p. 414.) Finally, it must in fact have imparted such notice, or at least sufficient notice to put the defendant on his defense. In this regard, it is not enough that the process inform the defendant of the fact of a lawsuit, or even of a lawsuit in which his name appears. Due process requires notice of "the duty to defend." (*Karlsson v. Rabinowitz, supra*, 318 F.2d 666, 668.)

■ Here we need look no further than the first such requirement, for this is a case, like *MJS* and *Mannesmann*, of no compliance at all. The case would be different, and much closer to *Cory*, if the summons had been marked to reflect that it was served on Haller as a person sued by a fictitious name, but had merely *omitted the name*. Instead, the summons contained no indication whatever that he was being sued by a fictitious name, or indeed that *he* was being sued *at all*. It did not by its terms command *him* to do anything. It therefore could not warn him of adverse consequences if he failed. It did not direct him to any statute from which he might have inferred these matters. It was fatally defective, and assuming the rule of substantial compliance is available, it was not satisfied.

It follows that the trial court erred by holding that the service on defendant Haller was sufficient to confer jurisdiction for purposes of a default judgment.[7]

## III. *Attorney Fees*

Defendant contends that because plaintiff sought and received an award of attorney fees below, defendant is entitled to an award of attorney fees on appeal. Plaintiff does not respond to this point. It appears to us, however, that any award at this point would be premature. (See *Turner v. Schultz* (2009) 175 Cal.App.4th 974, 984 [96 Cal.Rptr.3d 659], and cases cited.) We therefore defer this issue for eventual resolution in the trial court.

---

[7] Defendant also contends that the judgment was void because the complaint completely failed to state a cause of action against the Doe defendants. We find it unnecessary to address this contention.

## DISPOSITION

The order denying defendant's motion to vacate is reversed. The trial court is directed to grant the motion, vacate the judgment, and set aside the underlying default.

Premo, J., and Elia, J., concurred.