Filed 5/30/25  Scharf Investments v. Scharf CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SCHARF INVESTMENTS, LLC, et al., | H050911 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 22CV399395) |
| v. | |
| JEFFREY SCHARF et al., | |
| Defendants and Appellants. | |

Before this court for the second time, appellants Jeffrey Scharf and Sherril Smith-Scharf appeal from the trial court's order granting a petition to confirm an arbitration award to respondents Brian Krawez and Scharf Investments, LLC.  In the Scharfs' first appeal, we affirmed the trial court's denial of the Scharfs' petition to correct the arbitration award, concluding that the Scharfs had not shown reasonable diligence in attempting personal service and had not substantially complied with substitute service requirements.  (*Scharf et al. v. Scharf Investments, LLC, et al.* (June 30, 2023, H050150) [nonpub. opn.] (*Scharf*).)[1]

Now appealing from the order granting respondents' later petition to confirm the arbitration award, the Scharfs argue that remand is required for the trial court to

_____

[1] This court previously granted the LLC's request for judicial notice of the prior appeal and opinion in case number H050150.

determine whether equitable considerations excuse their failure to comply with the 100-day deadline set forth under Code of Civil Procedure section 1288.2[2] to request corrections to the arbitration award. The Scharfs further argue that the trial court had an independent duty to review the arbitration award to determine whether its issuance of injunctive relief and award of punitive damages was either unconstitutional or in violation of public policy. Finding no reversible error, we affirm.

## I.    BACKGROUND

### A.    *The Arbitration Award*

Krawez and the LLC sought arbitration of their claims against the Scharfs for breach of the LLC's operating agreement and the Membership Interest Purchase Agreement (MIPA) by which Krawez acquired the Scharfs' interest in the LLC. Krawez and the LLC also pursued related tort and unfair competition claims, and the Scharfs counterclaimed.

On November 10, 2021, a three-arbitrator panel found in favor of Krawez and the LLC, issuing and serving a final award of $61,450,000 in compensatory damages and $5 million in punitive damages, as well as attorney fees and prejudgment interest. The panel also ordered injunctive relief, enjoining Scharf from "(1) misrepresenting his role at [the LLC], e.g., claiming credit for the successes during the same period he was absent from a meaningful role at [the LLC]; (2) further violating the terms of the 2016 MIPA; [and] (3) . . . making false disparaging statements regarding [the LLC]."

### B.    *The Petition to Correct and the Scharfs' First Appeal*

On February 17, 2022—one day before section 1288's 100-day deadline to file and serve a petition to vacate or correct the award—the Scharfs filed a petition to correct the award, arguing in part that the injunction exceeded the arbitration panel's authority and that the punitive damages award was improper.

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

The Scharfs attempted service that same day (a Thursday) at the LLC's office after its normal business hours. A staff member who was working late answered the door, and when asked for Krawez, said Krawez was unavailable. The staff member offered to deliver a message to Krawez, but the process server said only to tell Krawez that "Tom was looking for him," without otherwise identifying his purpose for being there or asking whether the office would be open the next day.

The next day—the Friday before a Monday holiday—the process server returned at 10:06 a.m. but the office was locked, vacant, and in fact closed through Monday, February 21, 2022, for the holiday weekend. The process server returned at 3:34 p.m. that same Friday to the still closed and vacant office and put the documents through the mail slot. Rather than identify a "person . . . apparently in charge" (§ 415.20) with whom the documents were left, the process server wrote, "PLACED DOCUMENTS INSIDE OFFICE SUITE BY USING THE MAIL SLOT." The documents were not found by LLC staff until the following Tuesday, February 22, 2022, and two additional copies were delivered to the office by mail later that day.

Krawez and the LLC moved to quash service of the Scharfs' petition, arguing that the Scharfs had failed to properly serve the petition by the deadline mandated by section 1288. Over the Scharfs' objections, the trial court granted the motion to quash service and concluded that the petition to correct the arbitration award was moot. The trial court concluded that the Scharfs had failed to make a reasonably diligent attempt at personal service and that the attempted substitute service (by placing the documents through the mail slot) was defective.

The Scharfs appealed from the order granting the motion to quash in case number H050150. We affirmed the order in an unpublished decision. We first concluded that the Scharfs were not reasonably diligent in their attempts at service on Krawez, a prerequisite before a party can resort to substituted service on a natural person under section 415.20, subdivision (b). We found that the Scharfs left themselves only a narrow margin in

3

which to effect service but apparently failed to consider long-standing business hours that were in effect on February 17, 2022. Further, despite contact with LLC staff, the process server never inquired about holiday hours. And even assuming reasonable diligence as to Krawez personally, we held that "[t]he Scharfs established neither an adequate degree of compliance [with statutory requirements] nor the probable or actual efficacy of their efforts to comply" with the statute. (*Scharf*, *supra*, H050150, at p. *7.)

The Scharfs petitioned this court for a rehearing, arguing that we should reconsider our decision in light of *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932 (*Law Finance*) (holding that § 1288.2 deadline is not jurisdictional). We denied the petition for rehearing, and the California Supreme Court denied the Scharfs' petition for review the following month.

## C. *The Petition to Confirm*

After the trial court denied the Scharfs' petition to correct the award, Krawez and the LLC petitioned to confirm it. In support of the petition to confirm, Krawez and the LLC argued the Scharfs' untimeliness in petitioning to correct the award prevented the Scharfs from using opposition to the petition to confirm "as a backdoor way" to resuscitate their time-barred challenges.

With *Scharf* pending, the Scharfs opposed confirmation and argued that the trial court should instead correct the award. The Scharfs argued once again that their petition to correct had been properly served and that the trial court was not bound by the prior order of another judge granting the motion to quash in *Scharf*. On the merits, the Scharfs argued that the arbitration panel had exceeded its powers by awarding punitive damages and injunctive relief. The Scharfs added that the trial court should deny Krawez and the LLC prejudgment interest.

## D. *The Trial Court's Order*

The trial court granted Krawez and the LLC's petition to confirm the arbitration award. Characterizing the 100-day limit under sections 1288 and 1288.2 as a

4

"jurisdictional deadline," the court did not rule on the merits of the Scharfs' challenges to the award.

The judgment confirming the arbitration award was entered January 2023. The Scharfs again timely appealed.

## II.    DISCUSSION

### A.    *Timeliness of the Challenges to the Arbitration Award*

To challenge an arbitration award, a party may petition to vacate the award (§ 1285) or request corrections in opposing a petition to confirm it (§ 1285.2). (*Law Finance*, *supra*, 14 Cal.5th at p. 946.) But "[r]egardless of the method, the [California Arbitration Act (Code Civ. Proc., § 1280 et seq.)] imposes the same deadline: . . . 'not later than 100 days after the date of the service of . . . the award.' " (*Law Finance*, at p. 946, quoting §§ 1288, 1288.2.)

For this appeal, the Scharfs do not dispute they served their petition to vacate and their opposition to the petition to confirm outside the 100-day statutory deadline. But relying on *Law Finance*, the Scharfs argue that the trial court erred by granting the petition to confirm without first considering whether equitable tolling or equitable estoppel afford them relief from strict application of the deadline. Although we agree that *Law Finance* clarified the scope of the trial court's authority to consider equitable relief from a limitations period once considered jurisdictional, the specific factual grounds the Scharfs would have us compel the trial court to consider anew do not warrant remand.[3]

---

[3] The trial court in its order granting Krawez and the LLC's petition to confirm described the 100-day deadline under section 1288 as "jurisdictional" when referencing the prior order granting the motion to quash. Given *Law Finance*'s construction of section 1288.2's analogous deadline, we infer that the section 1288 deadline is likewise "not jurisdictional in the relevant sense." (*Law Finance*, *supra*, 14 Cal.5th at pp. 952, 949.) But on appeal, we affirm the trial court's ruling if it is correct for any reason, even

5

## 1. *Forfeiture and the Applicability of the* Law Finance *Decision*

In *Law Finance*, the California Supreme Court held that the 100-day deadline set forth under section 1288.2 was "not jurisdictional in the relevant sense" and that the Legislature did not intend the deadline to limit the fundamental jurisdiction of the court. (*Law Finance*, *supra*, 14 Cal.5th at pp. 949, 952.) *Law Finance* further held that "section 1288.2 is subject to both equitable tolling and claims of equitable estoppel." (*Id.* at p. 956.)[4] Thus, the Scharfs' untimely service here did not bar the trial court from considering whether equity compelled consideration of their challenges to the arbitration agreement.

Although the Scharfs in the trial court did not raise equitable tolling or equitable estoppel as the basis for relief from section 1288, we do not consider them to have forfeited these grounds for relief, because to raise them " ' "would have been futile or wholly unsupported by substantive law then in existence." ' " (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1031.) Before *Law Finance*, the controlling authority largely held that section 1288.2's deadline was jurisdictional. (See *Law Finance*, *supra*, 14 Cal.5th at p. 952, fn. 3 [disapproving *Darby v. Sisyphian, LLC* (2023) 87 Cal.App.5th 1100]; see also *Santa Monica College Faculty Assn. v. Santa Monica Community College Dist.* (2015) 243 Cal.App.4th 538, 544–545 [holding that deadline for filing and service of petition to vacate is jurisdictional]; *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1211 [accord].) Although Krawez and the LLC observe that the California Supreme Court granted review in *Law Finance* well before the underlying trial court proceedings, " '[t]he

_____

if that reason was not relied upon by the trial court. (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 297, fn. 8.)

[4] In *Law Finance*, Key had also filed a petition to vacate the arbitral award some 130 days after service of the final award. (*Law Finance*, *supra*, 14 Cal.5th at p. 946.) The California Supreme Court in part noted that it was undisputed that this request was untimely as it was outside the 100-day limit set forth under section 1288 (*ibid.*) but there was otherwise no further discussion about section 1288.

circumstance that some attorneys may have had the foresight to raise th[e] issue does not mean that competent and knowledgeable counsel reasonably could have been expected to have anticipated the high court's decision.' " (*People v. Perez* (2020) 9 Cal.5th 1, 8.)[5]

Krawez and the LLC, however, further claim that the Scharfs are precluded from relitigating claims of equitable tolling or equitable estoppel based on our decision in *Scharf*. Krawez and the LLC argue that because the substantial compliance doctrine we applied in *Scharf* is rooted in equity (see, e.g., *Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 914), our affirmance in *Scharf* categorically precludes any claim for equitable relief.

Despite sharing a common grounding in equity, substantial compliance, equitable tolling, and equitable estoppel are not identical doctrines. Certain of the elements of substantial compliance and equitable tolling may overlap in a particular case, but a party's failure to establish substantial compliance with substitute service requirements does not negate *all* elements of equitable tolling or equitable estoppel. Thus, the Scharfs are not precluded from arguing on appeal that they were prejudiced by the trial court's belief that it lacked fundamental jurisdiction over their untimely challenge to the arbitration award.

The theoretical availability of these arguments post-*Law Finance*, however, does not mean a trial court must reconsider—under a different label—the identical factual circumstances found inadequate in *Scharf*.

---

[5] Although *Law Finance* was the basis of the Scharfs' later-filed petition for rehearing with this court following our unpublished decision, we were under no obligation to consider its holding or its application in *Scharf*. "Generally, '[i]t is much too late to raise an issue for the firs[t] time in a petition for rehearing.' " (*Alameda County Management Employees Assn. v. Superior Court* (2011) 195 Cal.App.4th 325, 338, fn. 10.)

7

## 2. *Equitable Considerations*

Because equitable tolling and equitable estoppel rely on findings of fact, the Scharfs argue that we must remand the matter to the trial court to determine whether these doctrines warrant relieving them of their noncompliance with the statutory deadline. But the Scharfs are precluded from relitigating whether Krawez and the LLC received timely notice, a prerequisite for equitable tolling of the deadline for service. And the facts they proffer supply no basis to estop Krawez or the LLC from relying on that deadline. For these reasons, we will affirm.

### a. *Equitable Tolling*

"Equitable tolling is a 'judicially created, nonstatutory doctrine' that ' "suspend[s] or extend[s] a statute of limitations as necessary to ensure fundamental practicality and fairness." ' " (*Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 719 (*Saint Francis*).) "The doctrine allows our courts, 'in carefully considered situations,' [citation] to exercise their inherent equitable powers to 'soften the harsh impact of technical rules' [citation] by tolling statutes of limitations." (*Id.* at p. 724.) Equitable tolling thus applies when the following three elements are present: " '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff.' " (*Ibid.*)

The requirement of timely notice requires a court to "focus on whether the party's actions caused the defendant to be 'fully notified within the [statute of limitations] of plaintiffs' claims and their intent to litigate.' " (*Saint Francis*, *supra*, 9 Cal.5th at p. 726.) But the issue of timely notice was decided against the Scharfs in *Scharf*. The Scharfs there had argued that they had substantially complied with service requirements, but this court held that to the contrary and affirmed the motion to quash. A finding of substantial compliance requires three preconditions: (1) "*some* degree of *compliance* with the offended statutory requirements"; (2) circumstances of the attempted service "mak[ing] it ' " 'highly probable' " ' " that it would impart the same notice as full compliance"; and

8

(3) "at least sufficient notice to put the defendant on his defense.  In this regard, it is not enough that the process inform the defendant of the fact of a lawsuit, or even of a lawsuit in which his name appears.  Due process requires notice of 'the duty to defend.' " (*Carol Gilbert, Inc. v. Haller* (2009) 179 Cal.App.4th 852, 865–866 (*Gilbert*).)  Like the trial court that had rejected the Scharfs' petition to correct the award, we concluded that none of these conditions had been met, holding that "[t]he Scharfs established neither an adequate degree of compliance nor the probable or actual efficacy of their efforts to comply." (*Scharf*, *supra*, H050150, at p. *7.)

Though worded differently, the requirement of timely notice for purposes of equitable tolling—full notification of a claim and an intent to litigate (*Saint Francis*, *supra*, 9 Cal.5th at p. 726)—is essentially identical to the precondition in substantial compliance that a defendant receive notice to defend (*Gilbert*, *supra*, 179 Cal.App.4th at p. 866).  The Scharfs argue that Krawez and the LLC had full notice by virtue of the underlying dispute—the arbitration itself.  But the underlying arbitration did not give Krawez and the LLC notice of a duty to defend against the Scharfs' opposition to the final award.  (See *ibid.*)  And in the prior appeal, we were explicit in our conclusion that the Scharfs' untimely service had caused Krawez and the LLC to lose four days to respond to the petition to correct and that the Scharfs did nothing to otherwise alert opposing counsel in the interim.[6]  (*Scharf*, *supra*, H050150, at p. *1.)  We thus held that the Scharfs did not timely provide Krawez and the LLC with full notification of a claim and an intent to litigate. (*Scharf*, *supra*, H050150, at pp. *10–12.)

In their reply brief, the Scharfs argue that the timely notice requirement is incompatible with *Law Finance* because there, the service of the petition to vacate the

---

[6] As pointed out by the Scharfs, the parties later stipulated that Krawez and the LLC had an "open-ended extension" of time to file a response to the petition to correct the arbitration award.  Though this might vitiate prejudice if we reached the second element of equitable tolling, it is immaterial to the notice element.

9

award was considered untimely under section 1288.2. (*Law Finance*, *supra*, 14 Cal.5th at p. 944.) But timely service is not essential to timely notice for equitable tolling purposes. The Scharfs fail to acknowledge that Key had informed the lender, long before the 100-day deadline, of her intention to file a petition to vacate the arbitration award. (*Id.* at p. 943.) Whereas here, it is undisputed that Krawez and the LLC had no notice—until late service of the Scharfs' petition—that the Scharfs intended to challenge the award in the first instance.

The doctrine of issue preclusion prevents a party from relitigating an identical issue that was actually litigated and necessarily decided against them or their privy in a former proceeding, if the decision was final and on the merits. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943; *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 [distinguishing claim preclusion and issue preclusion].) As all the required elements of issue preclusion are met, the Scharfs are precluded from relitigating the lack of timely notice, which is fatal to their claim of equitable tolling.

### b. *Equitable Estoppel*

"Although estoppel is generally a question of fact, where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether estoppel applies is a question of law." (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360 (*Feduniak*).) " 'Equitable estoppel, . . . also called estoppel by conduct, is simply stated. "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." [Citation.] The doctrine is defensive in nature only, and "operates to prevent one [party]

10

from taking an unfair advantage of another." ' " (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1334, fn. 3.)

" ' " 'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he [or she] must rely upon the conduct to his [or her] injury.' " ' " (*Doe v. Marten* (2020) 49 Cal.App.5th 1022, 1028 (*Marten*).)

"In the statute of limitations context, equitable estoppel may be appropriate where the defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit." (*Marten*, *supra*, 49 Cal.App.5th at p. 1028; see also *McMackin v. Ehrheart* (2011) 194 Cal.App.4th 128, 140 ["equitable estoppel comes into play only after the limitations period has run to preclude a party from asserting the statute of limitations as a defense to an untimely action where the party's conduct has induced another into forbearing to file suit"].) But equitable estoppel requires some indication that the conduct of the party to be estopped "*actually and reasonably induced plaintiffs to forbear suing*" within the applicable time. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 385 (*Lantzy*) [having pled "no facts indicating that defendant's conduct directly prevented them from filing their suit on time," the complaint established no basis to estop the defendants from asserting the statute of limitations against the complaint].) The undisputed facts on which the Scharfs rely do not support estoppel.

To begin, equitable estoppel may apply to permit the late filing of a lawsuit if "[t]he requisite act or omission . . . involve[s] a misrepresentation or nondisclosure of a material *fact* bearing on the necessity of bringing a timely suit." (*Marten*, *supra*, 49 Cal.App.5th at p. 1028.) Thus, assuming without deciding that equitable estoppel can apply to attempts at service, the nature of the factual misrepresentation or nondisclosure

11

must bear on the necessity of *timely service*. (See *ibid.*) In *Law Finance*, for example, the California Supreme Court remanded the matter for reconsideration to determine whether Key was entitled to equitable relief due to the parties' agreement to filing and service of a request to vacate after the 100-day deadline. (*Law Finance*, *supra*, 14 Cal.5th at p. 956.) Equitable estoppel in *Law Finance* thus directly related to whether the respondents' conduct had caused Key to forbear from filing a timely request because the parties had agreed to extend said deadline, purportedly relieving Key of the necessity of timely filing. (*Ibid.*; see *Lantzy*, *supra*, 31 Cal.4th at p. 385.) There is no such conduct here. The Scharfs' estoppel argument rests on their claim that Krawez and the LLC are estopped from arguing the "true fact" of the LLC's normal business hours—as stated in the LLC's Form ADV - Uniform Application for Investment Adviser Registration and Report by Exempt Reporting Advisers, filed March 14, 2022, with the Securities and Exchange Commission (SEC)—and that had the LLC abided by the hours set forth in the SEC filing, the Scharfs would have effected substituted service on the 100th day under section 1288.2 when the process server stopped by the LLC's office.

We are not persuaded that the "true facts" of the LLC's normal business hours, in a generic SEC filing, could constitute an "inducement" to forbear from timely service necessary to equitable estoppel. Even assuming that inducement may be satisfied by actual and reasonable mistake of fact, the LLC in its SEC filing does not commit that the LLC will *always* be open (and open to the public) Monday through Friday, between 8:00 a.m. and 4:00 p.m. The SEC filing sets out only when the LLC "normally conduct[s] business." A representation of normal business hours leaves open the observance of holidays and exceptional closures. And nothing in the SEC filing "bear[s] on the *necessity* of bringing a timely" service. (*Marten*, *supra*, 49 Cal.App.5th at p. 1028, italics added.) The Scharfs cite nothing from which a trier of fact could infer that Krawez and the LLC actually and reasonably induced them either to believe that the LLC would be

12

open on February 18, 2022, or to forbear from serving their challenge to the arbitration award within statutory time limits.  (See *Lantzy*, *supra*, 31 Cal.4th at p. 385.)

An examination of the four elements of equitable estoppel illustrates why the Scharfs' claim necessarily fails.  We acknowledge that the Scharfs may satisfy the third element of estoppel, that they were ignorant of the true state of the facts—that Krawez and the LLC would be unavailable for service of process on February 17 or 18.  (See *Marten*, *supra*, 49 Cal.App.5th at p. 1028.)  But the other three elements of estoppel are negated by the undisputed evidence in the record, foreclosing relief under the doctrine.  (See *Feduniak*, *supra*, 148 Cal.App.4th at p. 1360 [if even one element for estoppel is missing, it cannot apply].)

Assuming Krawez and the LLC generally agreed to be available for service of process at the LLC's normal business hours as stated in the SEC filing, the first element of estoppel—that "the party to be estopped must be apprised of the facts" (*Marten*, *supra*, 49 Cal.App.5th at p. 1028)—cannot be met.  The misrepresentation giving rise to a claim of equitable tolling must be of some material "*fact* bearing on the necessity of bringing a timely suit."  (*Ibid.*)  But the undisputed evidence in the record is that the Scharfs had given every indication that they were resigned to accepting the arbitration award.  Following the interim award, the Scharfs disputed neither attorney fees nor costs and briefed only "the question of prejudgment interest" on the $61,450,000 award.  To open their ultimately successful argument on prejudgment interest, they emphasized the Scharfs' acquiescence and prompt compliance with all terms of the arbitration award, including both taxable liquidation of appreciated assets to pay the judgment and terminating certain client accounts and newsletter publication in accordance with the injunctive relief.  Indeed, the Scharfs indicated that "[t]heir priority now is to come to terms with the Panel's decision, and to try to move forward with the rest of their lives as best they can."  And in November 2021, the Scharfs wired payment of the arbitration award to Krawez's account.  Communication between the parties' counsel in December

2021 was limited to the issue of interest for the few days by which this wire transfer of "the final award" had been delayed.

And in *Scharf*, the Scharfs in attempting to show substantial compliance had ample incentive to prove that Krawez and the LLC had notice of their intent to challenge the arbitration award. (*Gilbert*, *supra*, 179 Cal.App.4th at p. 866 [substantial requirement must make it highly probable that attempted service imparted same notice as full compliance and must have imparted such notice].) Yet it remained undisputed that the Scharfs disclosed no intention to contest the award and, to the contrary, touted their ostensible acceptance of the award to argue against prejudgment interest. Although the Scharfs' counsel at oral argument surmised that Krawez and the LLC might somehow have been alerted to the petition, the Scharfs' public avowal of their acceptance of the award, together with the process server's concealment of his purpose in his first service attempt, belie that possibility. Thus, there is no evidence that Krawez and the LLC intended for the Scharfs to act on an SEC filing unconnected with the litigation to effectuate service. (See *Marten*, *supra*, 49 Cal.App.5th at p. 1028.) In other words, there is no evidence that Krawez and the LLC *intended* that the Scharfs attempt service of process at the LLC's office on either February 17 or February 18.

More importantly, nothing in the record suggests that the Scharfs actually relied upon Krawez and the LLC's representation. (*Marten*, supra, 49 Cal.App.5th at p. 1028.) The undisputed evidence is that the Scharfs' process server made the first attempt at service at the LLC *after* the LLC's normal business hours. This suggests that the Scharfs were relying not on the SEC filing but on different assumptions about the LLC's business hours to effectuate service. Even in opposing the motion to quash service of the petition to correct the award, the Scharfs made no mention of the SEC filing, faulting Krawez for his travel and closure of the LLC office "during *standard* business hours." (Italics added.) It was not until September 2022 that the Scharfs first raised the SEC form—filed by the LLC after the failed attempts at service—as grounds for relief.

14

We recognize that substantial compliance and equitable estoppel are different doctrines. The focus of substantial compliance is typically on the party attempting service and the objective circumstances in which the party makes those attempts, whereas equitable estoppel requires an examination of *both* sides' conduct. But in *Scharf*, the Scharfs' approach to opposing the motion to quash their petition to correct the award included faulting Krawez and the LLC for thwarting the Scharfs' 11th-hour service effort. For substantial compliance purposes, the Scharfs made the reasonableness of their expectation that the LLC office would be open and that Krawez would be present central to their claim that they were reasonably diligent in their attempts to serve Krawez and that the objective nature and circumstances of the attempted service made their service efforts adequate. (*Gilbert*, *supra*, 179 Cal.App.4th at pp. 865–866.) The Scharfs in fact asserted that respondents "attempt[ed] to frustrate service," surmising that Krawez deliberately timed his absence from the LLC office "to coincide with [the Scharfs'] 100-day deadline for serving their [p]etition" and "cho[osing] to close [the LLC's] office[]" on a day before a legal holiday "rather than ensure that another . . . employee[] was present to accept service of process." (Some capitalization omitted.) Having failed in *Scharf* to substantiate their assertion that Krawez knowingly closed the LLC office to thwart compliance with the 100-day service deadline, the Scharfs can make no plausible claim of prejudice here: The record here supplies no basis to conclude that it is reasonably probable that the Scharfs would have achieved a more favorable result on respondents' petition to confirm the same award absent the trial court's determination that section 1288.2's 100-day deadline was jurisdictional. (Cal. Const., art. VI, § 13; *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347 ["an appellant has the burden to show not only that the trial court erred but also that the error was prejudicial"].)

In sum, because what the Scharfs wish to litigate in the trial court is inadequate as a matter of law as applied to these undisputed facts, remanding the matter would be futile. (See *Feduniak*, *supra*, 148 Cal.App.4th at p. 1360.)

**B.** *The Trial Court's Duty to Review the Award Before Confirmation*

The Scharfs also insist that even without a timely served petition to correct, the trial court had an independent duty to determine whether the grant of injunctive relief and punitive damages was proper. Not so.

It is axiomatic that " 'courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties.' " (*Law Finance*, *supra*, 14 Cal.5th at p. 957.) To be sure, issues going to the " 'illegality of the entire transaction' " can be raised, because "the arbitration statute permits a court to vacate an arbitral award if ' "the arbitrators exceeded their powers," ' and 'the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise.' " (*Ibid.*) So the California Supreme Court has affirmed the right to judicial review of claims that the arbitrator has enforced an illegal contract or that confirming the award " 'would be inconsistent with the protection of a party's statutory rights.' " (*Ibid.*)

But even this limited right to judicial review depends on timely assertion by the party challenging the award, within the "statutory scheme governing challenges to arbitration awards," and a party "may not disregard the [statutory requirements] for when those arguments must be asserted." (*Law Finance*, *supra*, 14 Cal.5th at p. 959.) Thus, "[j]ust as an appellant may forfeit the opportunity to vindicate . . . statutory rights by failing to preserve an issue in the trial court or by failing to file a timely notice of appeal, so too, in a postarbitration judicial proceeding to enforce an arbitral award, a challenger may forfeit the opportunity to raise a claim of contract illegality by failing to timely request that the arbitration award be corrected or vacated." (*Ibid.*) "If the rule were otherwise, a party who missed the initial 100-day deadline would be able to resurrect any

16

otherwise time-barred challenge by filing a timely response to a petition to a confirm." (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 385 (*Douglass*).)

Here, the Scharfs argue that the arbitration panel exceeded legal restrictions on the arbitral grant of injunctive relief and contractual restrictions on punitive damages.  But by their untimeliness, the Scharfs have forfeited these challenges to the legality of the award. (*Law Finance*, *supra*, 14 Cal.5th at p. 959.)

Citing the statutory grounds for vacating or correcting an arbitration award (§§ 1286.2, subd. (a)(4) & 1286.6, subd. (b)), the Scharfs posit a self-executing judicial duty to vacate arbitration awards when they violate a party's statutory rights or a well-defined public policy.  This argument ignores the statutory scheme that requires the parties to seek confirmation, correction, or vacatur, and the unambiguous time limits of sections 1288 and 1288.2 that *require* filing and service of a petition to correct or a response requesting that an arbitration award be vacated no later than 100 days of service of the arbitration award.  " '[I]t is not for us to rewrite . . . statute[s].' " (*Douglass*, *supra*, 20 Cal.App.5th at p. 385.)

Arguing to the contrary, the Scharfs rely on *Teamsters Agr. Workers Union v. Internat. Brotherhood of Teamsters* (1983) 140 Cal.App.3d 547 (*Teamsters*) and *Loma Portal Civic Club v. American Airlines, Inc.* (1964) 61 Cal.2d 582 (*Loma Portal*) for the proposition that courts must independently evaluate public policy and the interests of third parties before issuing injunctions.  But neither case involved arbitration awards or judicial confirmation of arbitration awards, rendering them procedurally distinguishable. (*Teamsters*, at p. 555; *Loma Portal*, at p. 588.)  In short, the authorities on which the Scharfs rely do not support the proposition that a court must independently consider challenges to an arbitration award that the party opposing confirmation has forfeited.

Finally, the Scharfs in their reply brief make much of the Supreme Court's disclaimer that "[i]n addressing the timeliness of Key's claim . . . , [it] express[ed] no views on a court's discretion to reach the merits of a forfeited claim of contract illegality

17

where enforcement of the contract raises matters of significant public interest and threatens substantial injustice." (*Law Finance*, *supra*, 14 Cal.5th at p. 959, fn. 6.)  But the Scharfs make no credible case that either the punitive damages or the injunction fits this narrow category of time-barred claims that the high court has neither prohibited not permitted a trial court to reach as a matter of discretion.  Nor do the Scharfs establish that we could remand to effectively compel such consideration.  The punitive damages are fact-specific and dependent on the language of the MIPA, and the injunction that was granted prohibited Jeffrey Scharf only from certain specific statements about the LLC and his role in it—neither sounding in matters of significant *public* interest.  And even constitutional claims can be forfeited by a failure to timely assert them in the trial court. (See *San Diego Police Dept. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 579 ["[i]n both criminal and civil cases, a constitutional claim is generally forfeited by the failure to assert it in the trial court"]; see also *Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 154 [constitutional issues not raised in earlier civil proceedings waived on appeal].)

Because the Scharfs failed to timely serve objections to the arbitration award under either section 1288 or 1288.2, the trial court had no obligation to independently consider their arguments that the arbitration panel exceeded its contractual or legal powers by awarding punitive damages or granting injunctive relief.  (*Law Finance*, *supra*, 14 Cal.5th at p. 959; *Douglass*, *supra*, 20 Cal.App.5th at p. 385.)

## III.  DISPOSITION

The order granting Krawez and the LLC's petition to confirm the arbitration award is affirmed.  Krawez and the LLC are entitled to their costs on appeal.

_____

LIE, J.


WE CONCUR:


_____

GROVER, Acting P. J.


_____

WILSON, J.


*Scharf Investments, LLC, et al. v. Scharf et al.*
H050911